OPINION *Page 2 
{¶ 1} Defendant-appellant Jacob R. Howell appeals the March 1, 2006, judgment entry of the Delaware County Court of Common Pleas, Juvenile Division, in which the trial court denied the appellant's objection to the magistrate's January 20, 2006,[1] decision which had recommended that the appellant be found in contempt of court for failure to pay child support as ordered. Plaintiff-appellee is the Delaware County Child Support Enforcement Agency ("DCCSEA").
 STATEMENT OF FACTS AND LAW {¶ 2} On March 28, 2003, Brandy L. Bierce gave birth to David W. Howell. On March 30, 2003, appellant signed a father's affirmation acknowledging the fact that he was the birth father of David. On April 21, 2003, David's birth certificate, on which the appellant was listed as the father, was filed with the Ohio Department of Health.
 {¶ 3} On March 22, 2005, appellee DCCSEA filed a "Complaint to Adopt an Acknowledgment of Paternity Affidavit, Administrative Child Support Order, Medical Support Order, Entered by the Delaware County (Ohio) Child Support Enforcement Agency, Pursuant to Chapter 3111 of the Ohio Revised Code and Establish a Seek Work Order." A copy of the appellant's affirmation, as well as a certified copy of David's birth certificate, were attached to the complaint. The *Page 3 
magistrate issued a decision on March 24, 2005, in which she recommended that the appellant be found to be the natural father of David Howell, and recommended that appellant pay child support in the amount of $208.37 per month and obtain health insurance for the child. The magistrate's decision was adopted by the trial court and filed on March 28, 2005, and was successfully served upon the parties by certified mail. Appellant did not, however, make any child support payments.
 {¶ 4} On July 5, 2005, DCCSEA filed a motion to show cause why appellant should not be held in contempt for his failure to pay child support as ordered. On July 12, 2005, the magistrate issued an order scheduling a show cause hearing in which she ordered the appellant to show cause as to why he should not be held in contempt of court. The hearing was scheduled for September 16, 2005, and the order was served upon the parties by certified mail. Pursuant to appellant's request, counsel was appointed to represent him in an August 22, 2005, entry.
 {¶ 5} On September 1, 2005, appellant filed a motion to set visitation. A hearing on that motion was also set for September 16, 2005. Brandy Pierce was served by certified mail with notice of that motion. Counsel was also appointed for Ms. Bierce upon her request. On September 16, 2005, counsel for appellant and counsel for Bierce were asked to work with their respective clients and submit an agreed entry to the court by October 7, 2005. On October 7, 2005, counsel for appellant and for Bierce filed a joint motion requesting a hearing, as counsel were unable to obtain each of their respective client's cooperation in *Page 4 
working out the agreed entry. On October 12, 2005, the magistrate issued an order granting the joint motion and scheduled the "motions" for hearing on January 18, 2006. Notations on that order indicate it was served upon the parties and their counsel by ordinary mail.[2] On the day of the January 18, 2006, hearing, appellee DCCSEA was present, as was Brandy Bierce and her counsel. Neither the appellant nor his counsel were present for the hearing.
 {¶ 6} Patricia Church, as representative of the DCCSEA, testified regarding a verified printout which evidenced the fact that the appellant was in arrears in child support in the amount of $2,042.80 as of December 31, 2005.
 {¶ 7} Following the January 18, 2006, hearing, the magistrate issued an order in which she recommended that the appellant be found in contempt of court for failure to comply with the court's order to pay child support as entered by the court in its March 28, 2005, decision. The recommendation for sentencing was that the appellant be sentenced to thirty (30) days in the Delaware County jail, suspended on conditions that the appellant pay $50.00 toward his arrears within thirty (30) days of the date of the order, pay $41.00 monthly toward his arrears, pay current child support as ordered, and contact the DCCSEA within seven (7) days and provide the DCCSEA with his employer or bank account information for direct withholding of his support ordered obligation. In addition, the magistrate recommended that for each month the appellant was current in support and all arrearages payments, two days should be purged from his jail sentence starting *Page 5 
in February, 2006. The magistrate also recommended that a lump sum judgment be granted in favor of Brandy Bierce in the amount of $1,838.52, and a lump sum judgment be granted in favor of the Delaware County CSEA in the amount of $204.28, plus statutory interest as of December 31, 2005. The magistrate recommended that a seek work order be granted requiring appellant to report to the seek work program of the Delaware County Department of Job and Family Services. Finally, the magistrate recommended that the appellant's motion for visitation be dismissed without prejudice due to his failure to move or plead. The magistrate's decision was adopted and entered by the trial court on January 20, 2006.
 {¶ 8} On January 30, 2006, the appellant filed a "motion to set aside magistrates [sic] decision and set matter for further hearing." Appellant argued that neither he nor his attorney had received notice of the January 18, 2006, hearing, and that the appellant was not given an opportunity to present his defenses. Appellant further argued that the court erred in dismissing his motion for visitation without a hearing. On January 30, 2006, the appellant also filed an objection to the Magistrate's Decision arguing that appellant was not notified of the hearing and that appellant was improperly found in contempt in absentia. On March 1, 2006, the trial court denied appellant's objection. The appellant appealed, setting forth the following assignment of error:
 {¶ 9} "THE TRIAL COURT ERRED BY FINDING THE APPELLANT IN CONTEMPT IN ABSENTIA IN VIOLATION OF HIS STATUTORY AND CONSTITUTIONAL DUE PROCESS RIGHTS." *Page 6 
 {¶ 10} The appellant argues that the trial court erred in adopting a Magistrate's Decision, which found appellant in contempt, after neither the appellant nor his attorney appeared at the evidentiary hearing regarding that contempt, and after appellant filed a motion regarding the Magistrate's Decision alleging, in that motion, that appellant's counsel had not received notice of the hearing even though there were notations in the trial court file which indicated that counsel had been sent notice. We agree in part.
 {¶ 11} We find that the trial court should have treated appellant's Motion to Set Aside the Magistrate's Decision as an objection to the Magistrate's Decision and should have held a hearing on the motion prior to making a decision on whether to adopt the Magistrate's Decision. The motion claimed that neither counsel nor the appellant had notice of the contempt hearing. There were no affidavits filed in support of the motion but the motion was signed by counsel for appellant. The Fifth District Court of Appeals has ruled on a case involving a motion to set aside a default judgment of paternity where the appellant had alleged in his motion that he had not received notice of the proceedings, but the record indicated that an unclaimed certified mail service attempt was followed by ordinary mail which was not returned by the post office. The appellant had not submitted an affidavit. In that case, we held, "under such circumstances, we are persuaded that the trial court abused its discretion in overruling appellant's motion without at least an evidentiary hearing to assess the claim of invalid service of process. [Citation omitted]." State ex rel. Fairfield County CSEA v. Landis, Fairfield App. No. 2002 CA 00014, 2002-Ohio-5432. *Page 7 
 {¶ 12} The case sub judice differs in some respects fromLandis. One of those differences is that the case sub judice involves a motion to set aside a Magistrate's Decision rather than a motion to vacate a final judgment. We find said difference to be irrelevant because the main issue in Landis was, and in the case sub judice is, whether the appellant had notice and an opportunity to defend himself prior to the court making a final decision. Counsel for appellant in the case sub judice was trying to call a possible defect in the proceedings to the trial court's attention at a time when the trial court could correct any mistake prior to a final entry.
 {¶ 13} Another difference between the case sub judice andLandis is that in Landis the notice that was at issue was the initial notice of a complaint, which the defendant allegedly did not receive. In the case sub judice, the notice that is at issue is the notice of a hearing, which counsel for the appellant allegedly did not receive, after the appellant had previously received notice of the original motion. We find this difference to be irrelevant also since the main issue is whether the appellant had proper notice and opportunity to be heard, whether or not the notice was required by law to be served on the party or on counsel for that party.
 {¶ 14} We now address additional issues set forth by appellant. Appellant argues that contempt proceedings do not fall under the service provisions of Civ. R. 5(B) and that due process standards prohibit the court from finding the accused in contempt in absentia. We disagree because we find this contempt to be an indirect civil contempt. *Page 8 
 {¶ 15} R.C. 2705.02 defines acts which may constitute contempt of court, and states in pertinent part: "A person guilty of any of the following acts may be punished as for contempt: "(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer;. . . ."
 {¶ 16} Contempt has also been defined by the courts as the disregard or disobedience of an order or command of judicial authority. See,First Bank of Marietta v. Mascrete, Inc. (1998), 125 Ohio App.3d 257,263, 708 N.E.2d 262. Contempt may also involve an act or omission that substantially disrespects the judicial process in a particular case.Byron v. Byron, Franklin App. No. 03 AP 819, 2004-Ohio-2143 at ¶ 11, appeal not allowed by 103 Ohio St.3d 1462, 815 N.E.2d 678,2004-Ohio-5056. Contempt can be characterized as either direct or indirect. Id. at ¶ 12. Direct contempt occurs when a party engages in conduct in the presence of the court that interferes with the administration of justice. R.C. 2705.01; Turner v. Turner (May 18, 1999), Franklin App. No. 98AP-999, 1999 WL 356279. Indirect contempt, on the other hand, occurs when a party engages in conduct outside the presence of the court that demonstrates a lack of respect for the court or its lawful orders. Byron, supra, citing State v. Drake (1991),73 Ohio App.3d 640, 643, 598 N.E.2d 115. Typically, the failure to pay child support is viewed by courts as indirect contempt, as it occurs outside of the presence of the court and demonstrates a lack of respect for the court. DeLawder v. Dodson, Lawrence App. No. 02CA27, 2003-Ohio-2092, at ¶ 11.
 {¶ 17} Courts may further characterize contempt as criminal or civil, depending upon the nature of the contempt sanctions. Criminal contempt *Page 9 
imposes sanctions that are punitive in nature, and are designed to punish the party for past failures to comply with the court's order.State ex rel. Corn v. Russo, 90 Ohio St.3d 551, 555, 740 N.E.2d 265,2001-Ohio-15. Criminal contempt usually involves mandatory incarceration, and the party found to be in contempt usually has no opportunity to avoid the incarceration. Brown v. Executive 200,Inc. (1980), 64 Ohio St.2d 250, 253, 254, 416 N.E.2d 610.
 {¶ 18} Civil contempt, on the other hand, is remedial or coercive in nature, and will be imposed to benefit the complainant.DeLawder, supra, at ¶ 9, citing Pugh v. Pugh (1984), 15 Ohio St.3d 136,139, 472 N.E.2d 1085. Any sanction imposed by the court for civil contempt must provide the contemnor with an opportunity to purge himself or herself of the contempt. DeLawder, supra, at ¶ 10. "The contemnor is said to carry the keys of his prison in his own pocket * * * since he will be freed if he agrees to do as so ordered." Brown, supra, at 253.
 {¶ 19} The contempt in the case sub judice is remedial and allows the contemnor an opportunity to purge his jail sentence.
 {¶ 20} Therefore, we find this contempt to be civil in nature, and we conclude that the Civil Rules regarding notice apply. It is not in dispute that appellant was served by certified mail with the Motion to Show Cause and that appellant received that notice. This service complies with Civil Rules 4 and 4.1. When the parties failed to settle the matter, the trial court sent out a notice by regular mail to appellant and to appellant's counsel which set a hearing date on the motion. This notice complies with Civil Rule 5(A) and (B). Civil Rule 5(A) provides that subsequent notices shall be served on each of the parties, and Civil *Page 10 
Rule 5(B) provides that, if a party is represented by an attorney of record in the proceedings, service shall generally be made on the attorney. Civil Rule 5(B) permits this notice to be by regular mail.
 {¶ 21} Appellant argues that civil contempt proceedings do not fall under the provisions of Civil Rule 5(B). We concede that there is a split of authority on this issue. The appellant cites Hansen v.Hansen (1999), 132 Ohio App.3d 795, 726 N.E.2d 557, a decision from the First District Court of Appeals. Hansen concludes that service of a contempt motion, in a pending divorce case, must be attempted on the contemnor directly. We find that Hansen is distinguishable from the case sub judice. Hansen dealt with the initial service of the motion. It should also be noted that Hansen did not completely rule out service on an attorney. The majority wrote that it could envision circumstances "where a court might conclude that service on an alleged contemnor's attorney is sufficient, such as when the alleged contemnor has concealed himself or herself in an attempt to avoid service." Hansen, supra p. 801.[3] A footnote in the Hansen case indicates that Hansen is in agreement with the cases of James v. James (Feb. 12, 1996), Butler App. Nos. CA95-08-147 and CA95-09-155, unreported, 1996 WL 56014 andThompson v. Houser (June 25, 1991), Greene App. No 90-CA-53, unreported,1991 WL 116663. See also Cowgill v. Cowgill, Darke App. No. 02CA1587, 2003-Ohio-610. We find that James, Thompson and Cowgill, like *Page 11 Hansen all conclude that the initial service of a contempt motion must be on the party and not the party's attorney.[4]
 {¶ 22} The above mentioned cases are distinguishable from the case sub judice. In the case sub judice, appellant was served by certified mail with the initial motion. Appellant even requested appointed counsel to represent him on that motion. Appellant and appellant's counsel were sent notice by regular mail of the notice of hearing on that motion after attempts to settle the matter were unsuccessful.
 {¶ 23} We find that courts have found a similar procedure to be sufficient in Kurincic v. Kurincic (Aug. 31, 2000) Cuyahoga App. No. 76505, unreported, 2000 WL and Quisenberry v. Quisenberry (1993),91 Ohio App.3d 341, 632 N.E.2d 916. In Kurincic and Quisenberry, the alleged contemnor was served with the motion for contempt (by certified mail in Kurincic and personal service in Quisenberry). Subsequent notices regarding the contempts were sent by ordinary mail to the contemnors. We concede that Kurincic and Quisenberry involve regular mail service on the alleged contemnor, not the alleged contemnor's attorney. But, in each of these cases, the court found that Civ. R. 5 applies in situations involving subsequent notices sent out regarding a motion for contempt which had initially been served on an alleged contemnor. *Page 12 
 {¶ 24} There is a case from the Eighth District which found that notice to counsel of a show cause hearing date was insufficient. (Initial service of the motion was not at issue.) Klonowski v.Klonowski (Dec. 20, 1984), Cuyahoga App. No. 48377, unreported,1984 WL 6379. The Klonowski court found that Civ. R. 5(B) was applicable, but under the unique facts of the case, notice to the attorney was not sufficient to show that the alleged contemnor received adequate notice of the show cause hearing. The reasons for this decision were: (1) eight days after the show cause motion was filed, the alleged contemnor represented himself at a hearing to modify support payments and (2) on the day of the show cause hearing, when the alleged contemnor failed to appear, the referee called the attorney who had been sent notice of the hearing, and that attorney, who had represented the alleged contemnor on visitation matters, informed the referee that he no longer represented the alleged contemnor.
 {¶ 25} We, therefore, conclude, that under the facts of the case sub judice notice of a show cause hearing date sent to counsel, who had been appointed to represent the appellant at appellant's request after the appellant had been served by certified mail with a motion for contempt, was adequate notice to appellant when the contempt is an indirect civil contempt.
 {¶ 26} Appellant also argues that due process standards prohibit the court from finding the accused in contempt in absentia. We disagree. The court in Adams v. Epperly (1985), 27 Ohio App.3d 51, 52, 499 N.E.2d 374, stated, "Among the rights afforded to both civil and criminal contemnors are notice and an opportunity of a hearing on the matter. [Citations omitted.]" The Court in *Page 13 Adams concluded that in a criminal contempt, unlike in a civil contempt, the alleged contemnor must not only have the opportunity to be present, he must also actually be present at the criminal contempt hearing. In a civil contempt, an alleged contemnor is entitled only to those rights afforded in a civil action. Schrader v. Huff (1983), 8 Ohio App.3d 111,112, 456 N.E.2d 587.
 {¶ 27} Therefore, we conclude that an alleged contemnor in a civil contempt action may be tried in absentia if he or she was provided appropriate notice and an opportunity to be heard.[5]
 {¶ 28} In conclusion, we sustain appellant's assignment of error in part and overrule it in part. The decision of the trial court is reversed and this matter is remanded for the court to conduct an evidentiary hearing regarding whether appellant's counsel received notice of the contempt hearing.
[1] The magistrate filed a nunc pro tunc decision on February 2, 2006, in which she corrected the reference to the date on which the hearing was held from January 17, 2006, to January 18, 2006. The trial court approved and adopted both the January 20, 2006, and February 2, 2006, Magistrate's Decisions as its orders by entering such orders at the bottom of each of the Magistrate's Decisions. The trial court also, in each of those orders, noted that the effectiveness of the orders would be stayed upon the filing of timely objections to the Magistrate's Decision pending further order of the court.
[2] This is a generous interpretation of the notation. It lists counsel and parties after the letters "pc:". Each of the five entities listed has a ballpoint pen slash through it. There is also a date of 10-12-05 and written initials which look like DD below the list. Appellant seems to accept that this indicates regular mail service.
[3] It should further be noted that there was a dissenting opinion inHansen. The dissent stated, "I find no basis in the language of Civ. R. 5 upon which to hold such service invalid in contempt cases."
[4] James, Thompson and Cowgill also, unlike Hansen, involve post-decree filing of contempt motions. In Cowgill, it appears that the contempt was the only pending post-decree motion. Civ. R. 75(J) requires that whenever the continuing jurisdiction of the court is invoked in a divorce, annulment or legal separation, it shall be invoked by filing a motion in the original action and service will be under Civ. R. 4 to 4.6. In other words, once a divorce case is final, any post-decree motion usually must be served as if it were a complaint in a new action. This means service on the party, not on an attorney whose duties on the divorce action are completed.
[5] We note that a Motion to Impose a Jail Sanction, originally issued in a civil contempt, would be criminal in nature and the Civil Rules regarding service would not be applicable.
 Hoffman, P.J. and Boggins, J. concur *Page 14