OPINION *Page 2 
{¶ 1} Appellant, Raymond G. Ewing appeals the October 31, 2006 decision of the Licking County Court of Common Pleas, Domestic Relations Division, which granted a divorce to the parties. Appellee, Jacqueline A. Ewing also filed a cross-appeal.
 {¶ 2} The parties were married on August 9, 2003. No children were born as issue of the marriage. Both parties brought individual debt and assets to the marriage. Appellant is a mortgage broker and Appellee works for the Bureau of Workers' Compensation. After the parties were married, Appellant transferred funds from their joint National City savings account and opened a joint account with Ameritrade. On May 27, 2005, the Ameritrade account had a balance of $62,020.00
 {¶ 3} The parties wanted to have children but Appellee was unable to conceive naturally. They worked with Ohio Reproductive Medicine in their attempt to have a child. The parties pursued an IVF procedure in which Appellant would receive a donor egg fertilized with Appellant's sperm. In order to pay for the procedure, Appellee liquidated two 401(K) plans, cashed in a life insurance policy, and received money from her mother. Appellant contributed a smaller financial amount to the procedure. On May 9, 2005, the parties signed a contract with Ohio Reproductive Medicine. Appellee provided his sperm sample for the procedure. Eight days after signing the contract and providing his sample, Appellant asked Appellee for a divorce. Appellee filed her divorce complaint on May 25, 2005 for which Appellant filed an answer and counterclaim.
 {¶ 4} Appellee moved the trial court for permission to continue the impregnation procedure with donor sperm. The trial court denied the motion. If Appellee had canceled the process at that point, the parties would have received a refund for *Page 3 
$6,800.00. Appellee opted to continue with the procedure as much as she could complete within the bounds of the court order, so that she could preserve as much of the investment as was possible. The donor egg was fertilized with donor sperm and the resulting embryo was frozen. Because Appellee did not complete the entire procedure, she received a refund from Ohio Reproductive Medicine for $1,333.15.
 {¶ 5} The matter came on for trial and based on the testimony and evidence presented, the trial court granted a judgment of divorce on the grounds of incompatibility. It is from this judgment the parties now appeal.
 {¶ 6} Appellant raises eight Assignments of Error:
 {¶ 7} "I. THE TRIAL COURT ERRED BY ORDERING THAT THE DEFENDANT-APPELLANT PAY THE ENTIRE MBNA CREDIT CARD DEBT. DECREE PAGE 4, ARTICLE 6. THE ORDER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION.
 {¶ 8} "II. THE TRIAL COURT ERRED BY HOLDING THE DEFENDANT-APPELLANT RESPONSIBLE FOR THE ENTIRE FUNDS THAT HE WITHDREW FROM THE AMERITRADE ACCOUNT DUE TO THE FACT THAT $17,500 OF THAT MONEY WAS USED TO PAY A MARITAL DEBT, BEING THE MBNA CREDIT CARD DEBT REFERENCED ABOVE. DECREE PAGE 5, ARTICLE 7. THE ORDER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION.
 {¶ 9} "III. THE TRIAL COURT ERRED BY FINDING THAT THE PLAINTIFF-APPELLEE INVESTED $20,284.84 OF HER SEPARATE FUNDS FOR THE REPRODUCTIVE PROCEDURE AND, THUS ORDERING THE DEFENDANT-APPELLANT *Page 4 
TO REIMBURSE THE PLAINTIFF-APPELLEE $9,475.85. DECREE PAGE 6, ARTICLE 9. SAID ORDER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION.
 {¶ 10} "IV. THE TRIAL COURT ERRED BY APPLYING PROMISSORY ESTOPPEL PRINCIPLES AND FINDING FAULT WITH THE DEFENDANT-APPELLANT FOR AGREEING TO THE REPRODUCTIVE PROCEDURE AND THEN DECLINING TO PROCEED WITH THE PROCEDURE WHEN THE MARRIAGE REACHED A POINT OF DIVORCE, AND ORDERING THE DEFENDANT-APPELLANT TO REIMBURSE THE PLAINTIFF-APPELLEE FOR $9,475.85. DECREE PAGE 6, ARTICLE 9. SAID ORDER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION AND CONTRARY TO LAW.
 {¶ 11} "V. THE TRIAL COURT ERRED BY FINDING THAT THE DEFENDANT-APPELLANT ONLY CONTRIBUTED $2,400 TOWARDS THE REPRODUCTIVE PROCEDURE, AND THEN NOT GIVING HIM CREDIT FOR THAT AMOUNT AND THUS ORDERING THAT THE DEFENDANT-APPELLANT REIMBURSE THE PLAINTIFF-APPELLEE THE AMOUNT OF $9,475.85. DECREE PAGE 6, ARTICLE 9. SAID ORDER IS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 12} "VI. THE TRIAL COURT ERRED BY NOT AWARDING THE DEFENDANT-APPELLANT ONE-HALF (1/2) OF THE REFUND FROM OHIO REPRODUCTIVE MEDICINE THAT PLAINTIFF-APPELLEE HAD THE OPTION OF RECEIVING IN THE AMOUNT OF $6,800 (FULL AMOUNT) WHEN THE PLAINTIFF-APPELLEE UNILATERALLY AND AGAINST THE COURT'S ORDER PROCEEDED *Page 5 
WITH THE PROCEDURE OF CREATING THE EMBRYO AND HAVING IT FROZEN. DECREE PAGE 6, ARTICLE 9. SAID ORDER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION.
 {¶ 13} "VII. THE TRIAL COURT ERRED IN NOT PLACING ANY MONETARY VALUE ON THE ASSET CONSISTING OF A FROZEN EMBRYO THAT THE PLAINTIFF-APPELLEE CONTRACTED FOR AND ACQUIRED DURING THE MARRIAGE.
 {¶ 14} "VIII. THE TRIAL COURT ERRED BY NOT HOLDING THE PLAINTIFF-APPELLEE RESPONSIBLE FOR THE $5,500 WITHDRAWAL SHE MADE FROM THE MARITAL ACCOUNT WITHIN THREE DAYS OF FILING FOR DIVORCE. TR. P. 86. SAID ORDER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION."
 {¶ 15} Plaintiff-Appellee also filed a cross-appeal raising the following Assignments of Error:
 {¶ 16} "I. THE TRIAL COURT ERRED IN FAILING TO ALLOCATE TO APPELLEE A MARITAL SHARE OF APPELLANT'S SOCIAL SECURITY ACCOUNT.
 {¶ 17} "II. THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY OF DAVID DARST.
 {¶ 18} "III. THE TRIAL COURT ERRED IN ITS VALUATION OF A MARITAL ASSET.
 {¶ 19} "IV. THE TRIAL COURT ERRED IN REFUSING TO HOLD APPELLANT IN CONTEMPT OF COURT. *Page 6 
 {¶ 20} "V. THE TRIAL COURT ERRED IN ITS DETERMINATION OF THE AMOUNT OF REIMBURSEMENT OF THE OHIO REPRODUCTIVE MEDICINE ACCOUNT.
 {¶ 21} "VI. THE TRIAL COURT ERRED IN FAILING TO AWARD APPELLEE'S ATTORNEY'S FEES."
 I. {¶ 22} Appellant argues the trial court abused its discretion when it ordered Appellant to pay the MBNA credit card debt. Appellant states that by making Appellant responsible for the MBNA credit card debt, the trial court incorrectly found the MBNA credit card was separate debt. We disagree
 {¶ 23} Upon a review of the trial court's decision, we find the trial court did not characterize the MBNA credit card as separate or marital debt. In its judgment entry, the trial court stated, "The Defendant shall pay the debt to National City, MBNA and all other debts in his individual name, and hold the Plaintiff harmless thereon." (Decree, p. 4). The trial court further stated, "The Court finds that the asset/debt distribution in this particular case is equitable if not equal. The Court made this determination after review and consideration of ORC3105.171, including (C)(1) and (F)(1-9). Specifically the Court finds that the division is equitable if not equal." (Decree, p. 7).
 {¶ 24} A trial court enjoys broad discretion in fashioning an equitable division of marital property. See Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 218, 481-482, 450 N.E.2d 1140, 1141. To find an abuse of that discretion, the record must show more than an error of judgment on the trial court's part; the trial court's decision must be *Page 7 
unreasonable, arbitrary, or unconscionable. Booth v. Booth (1989),44 Ohio St.3d 142, 144, 541 N.E.2d 1028.
 {¶ 25} However, in determining a division of marital property, the trial court must consider and address the factors listed in R.C.3105.171. Focke v. Focke (1992), 83 Ohio App .3d 552, 554,615 N.E.2d 327, 328; Layne v. Layne (1992), 83 Ohio App.3d 559, 562,615 N.E.2d 332, 333-334. Failure to consider these mandatory statutory factors is an abuse of discretion. See, e.g., Bisker v. Bisker (1994),69 Ohio St.3d 608, 609, 635 N.E.2d 308, 309. See, also, Kaechele v.Kaechele (1988), 35 Ohio St.3d 93, 96, 518 N.E.2d 1197, 1200-1201.
 {¶ 26} Further, in order for this Court to review the allocation of property between parties to a divorce, the "trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." R.C. 3105.171(G), supra; Kaechele, 35 Ohio St.3d at 93, paragraph two of the syllabus. See, also, Layne, 83 Ohio App.3d at 564. This includes assigning a value to the parties' major assets and debts, e.g. Raff v. Raff, Stark App. No. 2004CA00251, 2005-Ohio-3348. Although the trial court's division of property is reviewed under an abuse of discretion standard, factual determinations such the value of the property subject to division are reviewed under a manifest weight of the evidence standard. Brown v. Brown, Pike County App. No. 02CA689, 2003-Ohio-304. Under this deferential standard, the trial court's classification of property will not be reversed if it is supported by some competent, credible evidence. Barkley v. Barkley (1997),119 Ohio App.3d 155, 159, 694 N.E.2d 989. *Page 8 
 {¶ 27} Revised Code 3105.171 states the following in part:
 {¶ 28} "(B) In divorce proceedings, the court shall, and in legal separation proceedings upon the request of either spouse, the court may, determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property in which one or both spouses have an interest.
 {¶ 29} "(C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section* * *.
 {¶ 30} "(D) Except as otherwise provided in division (E) of this section or by another provision of this section, the court shall disburse a spouse's separate property to that spouse. If a court does not disburse a spouse's separate property to that spouse, the court shall make written findings of fact that explain the factors that it considered in making its determination that the spouse's separate property should not be disbursed to that spouse.
 {¶ 31} "(E)(1) The court may make a distributive award to facilitate, effectuate, or supplement a division of marital property. *Page 9 
 {¶ 32} "(2) The court may make a distributive award in lieu of a division of marital property in order to achieve equity between the spouses, if the court determines that a division of the marital property in kind or in money would be impractical or burdensome.* * *.
 {¶ 33} "(F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
 {¶ 34} "(1) The duration of the marriage;
 {¶ 35} "(2) The assets and liabilities of the spouses;
 {¶ 36} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 {¶ 37} "(4) The liquidity of the property to be distributed;
 {¶ 38} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 39} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 {¶ 40} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 41} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 {¶ 42} "(9) Any other factor that the court expressly finds to be relevant and equitable* * *." *Page 10 
 {¶ 43} Upon a review of the record, we find the trial court did not abuse its discretion when it found Appellant to be responsible for the MBNA credit card balance. As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Drinkard v. Drinkard, Stark App. No. 2005CA00172, 2006-Ohio-680, ¶ 27, citing Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758. Furthermore, this Court has clearly expressed its reluctance to engage in piecemeal review of individual aspects of a property division taken out of the context of the entire award. See Harper v. Harper (Oct. 11, 1996), Fairfield App. No. 95 CA 56, citing Briganti v. Briganti
(1984), 9 Ohio St.3d 220, 459 N.E.2d 896.
 {¶ 44} The majority of the testimony in this trial was an attempt to determine "who paid what." The parties' intricate financial situation was made even more complex because Appellant engaged in a complicated debt-management system he termed "flipping." He constantly moved the credit card debt from one card to another. The evidence shows the MBNA credit card was only in Appellant's name, but there was testimony that a portion of the MBNA credit card balance may have been due to credit card debt Appellee brought to the marriage and was transferred to the MBNA credit card. Appellant paid the balance of the MBNA credit card by withdrawing $17,500 from the Ameritrade account, in direct contravention of the trial court's order and without permission from Appellee. *Page 11 
 {¶ 45} Viewing the asset/debt distribution in its entirety, we find no abuse of discretion when the trial court ordered Appellant to pay the debt to MBNA. Appellant's first Assignment of Error is overruled.
 II. {¶ 46} Appellant's second Assignment of Error is related to his first argument regarding the status of the MBNA credit card. He argues that the trial court should not have held him responsible for the entire amount that he withdrew from the Ameritrade account, but rather the trial court should have given him credit for $17,500 because Appellant used those funds to pay the balance of the MBNA credit card.
 {¶ 47} As stated above, we found that the trial court did not make a determination that the MBNA credit card was a separate debt. Rather, the trial court made an equitable but not equal distribution of the assets and debt.
 {¶ 48} On May 26, 2005, Appellant was served with a restraining order from the trial court, preventing Appellant from withdrawing funds from the Ameritrade account. The evidence at trial showed the Ameritrade account balance was $62,020.00 on May 27, 2005. Appellee gave Appellant permission to withdraw $5,000 from the account to pay bills. Appellant then withdrew an additional $36,652.01. The trial court did not grant Appellee's motion for contempt due to its finding that service of the notice failed; nor did the trial court find Appellant engaged in financial misconduct. It did hold Appellant responsible for the withdrawn funds. (Decree, p. 5).
 {¶ 49} In its judgment entry, the trial court found the Ameritrade account to be worth $62,027.00 which was to be evenly split between the parties, resulting in $31,013.50 for each party. The trial court offset Appellant's portion of Appellee's *Page 12 
retirement account against that figure and found Appellee's share of the account to be $15,867.45. (Decree, p. 5-6).
 {¶ 50} When we review the trial court's decision in its entirety, we find the trial court did not abuse its discretion when it held Appellant responsible for the entire amount of funds he withdrew from the Ameritrade account in contravention of the trial court's orders. And we have previously found the trial court did not characterize the MBNA credit card as a marital debt. Appellant's second Assignment of Error is overruled.
 III., IV., V., VI., VII. Cross-Assignment of Error V. {¶ 51} The next Assignments of Error are closely related and we shall address them in a combined fashion. Appellant and Appellee both argue the trial court erred in its decision regarding the parties' efforts to have a child through the medical services provided by Ohio Reproductive Medicine.
 {¶ 52} The trial court applied the principles of promissory estoppel to find that Appellee pursued the expensive medical procedure upon the promise/agreement of Appellant, and Appellee suffered harm as a result. (Decree, p. 6). Based upon those principles, the trial court ordered Appellant to reimburse Appellee for one-half of the funds Appellee invested in the procedure, less the amount refunded to Appellee by Ohio Reproductive Medicine. (Decree, p. 7). The trial court stated that it considered the amount Appellant testified he invested in the procedure, but excluded that amount from the trial court's consideration based upon Appellant's voluntary participation in the medical procedure up until the time he handed Appellee his proposed separation agreement. (Decree, p. 7). *Page 13 
 {¶ 53} As stated above, although the trial court's division of property is reviewed under an abuse of discretion standard, factual determinations such the value of the property subject to division are reviewed under a manifest weight of the evidence standard. Brown v.Brown, Pike County App. No. 02CA689, 2003-Ohio-304. As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base its judgment. Drinkard v. Drinkard, Stark App. No. 2005CA00172,2006-Ohio-680, ¶ 27, citing Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758.
 {¶ 54} Appellant argues in his third and fifth Assignments of Error that the trial court erred in calculating the amount the parties contributed towards the IVF procedure. We first find that upon a review of the record and evidence presented, there was competent and credible evidence to establish Appellee invested $20,284.84 of her separate funds in the IVF procedure. These funds came from the liquidation of two of Appellee's 401(K) account, a life insurance policy, and a gift from her mother. (Tr. 58). We further find there is competent evidence to support the trial court's finding that Appellant only contributed $2,400 towards the procedure. While Appellant testified that he took out $9,000 from an equity or signature line, he immediately deposited $6,500 of the $9,000 he withdrew back into the equity line, leaving approximately $2,500 towards the IVF procedure. (Tr. 25-27). Appellant's third and fifth Assignments of Error are overruled.
 {¶ 55} Appellant's fourth Assignment of Error argues the trial court abused its discretion when it applied promissory estoppel principles to the Appellant's behavior in *Page 14 
regards to the IVF procedure. In order to establish a claim of promissory estoppel, the plaintiff must show: (1) a clear and unambiguous promise; (2) detrimental reliance; (3) the reliance was reasonable and foreseeable; and (4) damages. Apple v. Coffman (May 2, 1996), Fairfield App. No. 95-CA-47, unreported.
 {¶ 56} "A promise is defined in Restatement of the Law 2d, Contracts (1981) 8, Section 2(1), as `* * * a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made'." Stull v. CombustionEngineering, Inc. (1991), 72 Ohio App.3d 553, 557, citing Cohen v.Messina (1985), 24 Ohio App.3d 22, 26.
 {¶ 57} We find the trial court's decision to apply promissory estoppel principles to this situation to be appropriate and not an abuse of discretion. In October 2004, the parties discussed the procedure and decided to make the large financial investment in the procedure. (Tr. p. 57-58). When Appellant stated they did not have any money for the procedure, Appellee offered her 401(K) plans and money from her mother to fund the expensive procedure. (Tr. p. 58). Appellant knew that she was liquidating these funds to pay for the procedure. (Tr. p. 23). Appellant also knew that he was unhappy in the marriage, but continued on with the procedure because he felt that it was his duty. (Tr. p. 32). On May 9, 2005, the parties signed a contract with Ohio Reproductive Medicine. On May 17, 2005, Appellant presented Appellee with a separation agreement. Appellee testified that she was surprised and upset when Appellant asked for a divorce. (Tr. p. 69). She stated that she never would have proceeded with the IVF procedure if she had known. (Tr. p. 167). *Page 15 
 {¶ 58} Addressing Appellant's sixth Assignment of Error and Appellee's fifth Cross-Assignment of Error, we find the trial court did not abuse its discretion when it rendered its decision regarding the monetary responsibility for the IVF procedure. We will not engage in a piecemeal review of the property division, but find that when reviewing the property division in its entirety, it is equitable.
 {¶ 59} Appellant finally argues in his seventh Assignment of Error, the trial court erred in not placing a monetary value on the frozen embryo. Upon review, we find this is a new argument that cannot be raised upon appeal. "The fundamental rule is that an appellate court will not consider any error which could have been brought to the trial court's attention, and hence avoided or otherwise corrected." Schade v.Carnegie Body Co. (1982), 70 Ohio St.2d 207, 210 citing State v.Glaros (1960), 170 Ohio St. 471, 166 N.E.2d 379, paragraph one of the syllabus.
 {¶ 60} Appellant's third, fourth, fifth, sixth and seventh Assignments of Error are overruled. Appellee's fifth Cross-Assignment of Error is overruled.
 VIII. {¶ 61} Appellant finally argues that the trial court erred in not holding Appellee responsible for the $5,500 she withdrew from the parties' joint checking account two or three days before she filed for divorce. He argues that she should be held responsible for the withdrawal since the trial court held him responsible for his withdrawals from the Ameritrade account. We disagree.
 {¶ 62} The trial court found that Appellant withdrew a significant amount of funds from the Ameritrade account against the terms of the restraining order and without permission of Appellee. (Decree, p. 5). Appellee withdrew funds from their joint *Page 16 
checking account to obtain legal counsel before she had filed for divorce. We find the trial court did not abuse its discretion in this matter. Appellant's eighth Assignment of Error is overruled.
 Cross-Assignment of Error I. {¶ 63} Appellee argues in her first Cross-Assignment of Error that the trial court erred in not factoring in Appellant's social security benefits in evaluating pension and marital property. We disagree.
 {¶ 64} The trial court found as follows:
 {¶ 65} "The Defendant has only his Social Security account. The stipulated present value of Defendant's Social Security benefits is $69,421.48. The marital portion of said account is allegedly $20,918.28. The Court, after consideration of the Social Security benefits of the Defendant, finds that they are speculative and thus not relevant to application in this case. The Court further finds that the short terms of the marriage, the age of the Defendant [35], and the considerable time before benefits would mature, all point to the speculative nature of the future award. These reasons as well as the overall financial circumstances of the parties argue against allocation of the marital portion of Defendant's Social Security account. See generallyNeville v. Neville, 99 Ohio St.3d 275, and specifically Splitt v.Splitt, 2005 WL 994611 (Ohio Ct.App. 5th Dist. Tuscarawas County 2005), Young v. Young, 2005 WL 1163023 (Ohio Ct.App. 9th District. Wayne County 2005)." (Decree, p. 3).
 {¶ 66} The Appellee's expert, Brian Hogan, testified on cross-examination as to the speculative nature of social security benefits. (Tr. p. 125, 133-134). We find his testimony supports the trial court's conclusion that under the facts of this case, social *Page 17 
security benefits are speculative. We conclude the trial court properly considered the social security issue and at its discretion, found it to be too speculative. We find no abuse of discretion in so finding.
 {¶ 67} Appellee's first Cross-Assignment of Error is overruled.
 Cross-Assignment of Error II. {¶ 68} Appellee next argues the trial court erred in allowing the testimony of David Darst, Appellant's expert to rebut the testimony of Brian Hogan. Based upon our finding on Appellee's Cross-Assignment of Error I, we find this argument to be moot.
 Cross-Assignment of Error III. {¶ 69} In Appellee's third Cross-Assignment of Error, she argues the trial court erred in its valuation of the 1997 Porsche. Factual determinations such the value of the property subject to division are reviewed under a manifest weight of the evidence standard. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment.
 {¶ 70} Appellant purchased a 1997 Porsche Boxter in October 2004 for $16,850 in cash. The vehicle was appraised on March 30, 2006 for $8,500. Appellee argues the reduction in the car's value was due to the Appellant's exclusive use and his failure to maintain the vehicle. Appellee argues the trial court erred in selecting the valuation date as of March 30, 2006. Appellee states the trial court should have selected the valuation date of the vehicle as May 27, 2005, the same date the trial court used to value the Ameritrade account. Appellant filed a financial affidavit on June 7, 2005 and listed the value of the vehicle as $16,000. *Page 18 
 {¶ 71} Upon a review of the record, we find there was competent, credible testimony to support the trial court's finding that the value of the vehicle to be only $8,500. In June 14, 2006, Appellant received an estimate for repairs on the vehicle in the amount of approximately $14,000. (Tr. p. 321). Based on the extensive amount of repairs needed and the appraisal of the vehicle in 2006, we find the trial court did not err in its decision. Appellee's third Cross-Assignment of Error is overruled.
 Cross-Assignment of Error IV. {¶ 72} Appellee next argues the trial court erred when it refused to find Appellant in contempt of court for multiple violations of the trial court's restraining order issued May 26, 2005. The trial court held as follows:
 {¶ 73} "The Plaintiff filed a Contempt action against Defendant on October 31, 2005. This matter was to be considered during the course of the contested divorce. Prior to the hearing, counsel for the Defendant proffered a motion to dismiss this motion based on the fact there had not been personal service. The Court sustains the Defendant's motion to dismiss. The Court rejects the Plaintiff's Civ.R. 5(B) argument. Due process and the unique nature of contempt proceedings dictate that alleged contemnors should be personally and directly served." (Decree, p. 3).
 {¶ 74} On October 31, 2005, Appellee filed a motion for contempt and served a copy of the motion upon Appellant's counsel. Appellant, the alleged contemnor, was never served with the motion for contempt directly, either by certified or regular mail.
 {¶ 75} We have previously analyzed a similar issue in Bierce v.Howell, 5th Dist. No. 06 CAF 05 0032, 2007-Ohio-3050, in which we found that initial service of the motion for contempt in an indirect contempt situation must be served upon the party and *Page 19 
not the party's attorney. Id. at ¶ 25; see also Hansen v. Hansen (1999),132 Ohio App.3d 795, 726, N.E.2d 557; James v. James (Feb. 12, 1996), Butler App. Nos. CA95-08-147 and CA95-09-155, unreported, 1996 WL 56014
and Thompson v. Houser (June 25, 1991), Greene App. No 90-CA-53, unreported, 1991 WL 116663; Cowgill v. Cowgill, Darke App. No. 02CA1587, 2003-Ohio-610. After initial service is complete, notices may then be sent to counsel. Id. Based on our holding in Bierce, we do not find it was error to grant Appellant's motion to dismiss Appellee's contempt motion.
 {¶ 76} Accordingly, Appellee's fourth Cross-Assignment of Error is overruled.
 Cross-Assignment of Error VI. {¶ 77} In Appellee's final Cross-Assignment of Error, she argues the trial court erred in failing to award Appellee attorney's fees. We disagree.
 {¶ 78} An award of attorney's fees lies within the sound discretion of the trial court. Rand v. Rand (1985), 18 Ohio St.3d 356. R.C. 3105.73(B) states,
 {¶ 79} "In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets."
 {¶ 80} Upon review of the record, we find the trial court did not abuse its discretion in denying Appellee's request for attorney fees. Factors such as the parties' comparable incomes and course of conduct such as Appellee's withdrawal of $5,500 *Page 20 
from the joint checking account in which to obtain legal counsel, demonstrates the trial court's decision was not unreasonable, arbitrary or unconscionable.
 {¶ 81} Appellee's sixth Cross-Assignment of Error is overruled.
 {¶ 82} Accordingly, the judgment of the Licking County Court of Common Pleas, Domestic Relations Division, is affirmed.
By: Delaney, J. Gwin, P.J. and Hoffman, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas, Domestic Relations Division, is affirmed. Costs to be split by appellant and appellee. *Page 1