[Cite as *Sano v. Sano*, 2011-Ohio-2110.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


PATRICIA SANO

      Plaintiff-Appellee

-vs-

JOSEPH SANO

      Defendant-Appellant

JUDGES:
Hon. Sheila G. Farmer, P. J.
Hon. John W. Wise, J.
Hon. Julie A. Edwards, J.

Case No. 2010 CA 00252

O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Domestic Relations Division, Case No. 2009 DR 00821 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | May 2, 2011 |


APPEARANCES:

For Plaintiff-Appellee

LORRIE E. FUCHS
Post Office Box 35787
Canton, Ohio 44735

For Defendant-Appellant

ALLYSON BLAKE
122 Central Plaza North, Suite 101
Canton, Ohio 44702

*Wise, J.*

{¶1} Appellant Joseph Sano appeals from the decision of the Stark County Court of Common Pleas, Domestic Relations Division, granting a divorce between Appellee Patricia Sano and appellant. The relevant facts leading to this appeal are as follows.

{¶2} Appellant and appellee were married in June 1994. No children were born of the marriage. On July 9, 2009, appellee filed a complaint for divorce. Appellant filed an answer on August 18, 2009. Pursuant to the trial court's temporary orders of July 28, 2009, all earnings of the parties were to be deposited into a joint account, from which household and living expenses would be paid.

{¶3} The matter proceeded to a trial on March 31, 2010 and April 1, 2010.

{¶4} The magistrate issued a decision on May 27, 2010. Among other things, the magistrate recommended that appellee be awarded the marital residence, which actually had a net negative equity of $262.00. Appellant's pension was to be divided 50/50, as were the Fidelity and US Bank accounts. The magistrate also found that appellant had committed financial misconduct of $7,472.00 by improperly removing certain funds from the joint account and for not depositing certain funds into said account. As a result of the financial misconduct the magistrate ordered appellant to pay a property equalization of $4,962.00 within 60 days. The magistrate also recommended that appellant pay $1,000.00 per month in spousal support for twelve months, with a final award of $1,800.00 per month for sixty-four months, terminable upon death or remarriage. The trial court did not retain jurisdiction over spousal support.

{¶5} Appellant filed objections to the decision of the magistrate on June 7, 2010. The trial court conducted a hearing, and then issued a judgment entry on August 9, 2010 overruling the appellant's objections. A final decree of divorce was issued on September 2, 2010.

{¶6} On September 9, 2010, appellant filed a notice of appeal. He herein raises the following four Assignments of Error:

{¶7} "I. APPELLANT WAS DENIED HIS DUE PROCESS WHEN THE COURT FOUND HIM IN CONTEMPT WHEN HE HAD NEVER BEEN SERVED WITH THE MOTION FOR CONTEMPT.

{¶8} "II. THE TRIAL COURT HAD NO IN PERSONAM JURISDICTION AND ERRED BY GRANTING THE APPELLEE'S MOTION FOR CONTEMPT SINCE APPELLANT WAS NOT PROPERLY SERVED WITH SAID MOTION.

{¶9} "III. IT WAS ERROR, AN ABUSE OF DISCRETION, AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE FOR THE TRIAL COURT TO FIND APPELLANT COMMITTED FINANCIAL MISCONDUCT.

{¶10} "IV. THE TRIAL COURT ABUSED ITS DISCRETION IN SETTING THE AMOUNT AND DURATION OF SPOUSAL SUPPORT AND NOT RETAINING JURISDICTION."

I., II.

{¶11} In his First and Second Assignments of Error, appellant contends the decision to proceed on appellee's motion to show cause regarding temporary orders was erroneous and a violation of due process of law. We disagree.

{¶12} Contempt has been defined as the disregard for judicial authority. *State v. Flinn* (1982), 7 Ohio App.3d 294, 455 N.E.2d 691. "It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St.2d 55, 271 N.E.2d 815, paragraph one of the syllabus. When reviewing a finding of contempt, an appellate court applies an abuse of discretion standard. See *State ex rel. Ventrone v. Birkel* (1981), 65 Ohio St.2d 10, 417 N.E.2d 1249.

{¶13} Contempt may be either direct or indirect. *In re Purola* (1991), 73 Ohio App.3d 306, 310, 596 N.E.2d 1140. In addition, "[c]ontempt is further classified as civil or criminal depending on the character and purpose of the contempt sanctions." *Purola* at 311, 596 N.E.2d 1140. "Civil contempt is designed to benefit the complainant and is remedial in nature. * * * Thus, an individual charged with civil contempt must be permitted to appear before the court and purge himself of the contempt by demonstrating compliance with the court's order." *State v. Miller,* Holmes App. No. 02 CA 16, 2003-Ohio-948, ¶ 28, citing *Purola,* supra. Typically, failure to pay court-ordered spousal support is classified as a civil contempt. See *Fisher v. Fisher*, Fairfield App. No. 2008 CA 00049, 2009-Ohio-4739, ¶ 48. Due process must be observed in both civil and criminal contempt proceedings. See, e.g., *In re Oliver* (1948), 333 U.S. 257, 274-275.

{¶14} We first find the contempt in the case sub judice is remedial and allows the contemnor an opportunity to purge his jail sentence. We further find this contempt to be indirect and civil in nature. The issue before us is whether service of the civil

contempt motion was sufficient when made on appellant's attorney, rather than on appellant personally.

{¶15} The record shows appellee filed her motion for contempt on February 16, 2010. Said motion contains a "Proof of Service" that states it was sent by regular mail to counsel for appellant. The docket does not indicate that service of the motion was ever sent to appellant himself. We note Civ.R. 5(B) states in pertinent part: "Whenever under these rules service is required or permitted to be made upon a party who is represented by an attorney of record in the proceedings, the service shall be made upon the attorney unless service upon the party is ordered by the court. ***." Appellant nonetheless argues that our decision in *Ewing v. Ewing*, Stark App.No. 06-CA-148, 2007-Ohio-7108, stands for the proposition that appellee, as the show cause movant, was required to personally serve appellant with the contempt motion. Our present reading of *Ewing* and the precedential case cited therein, *Bierce v. Howell*, Delaware App.No. 06 CAF 05 0032, 2007-Ohio-3050, suggests that the question of serving a contempt motion in the midst of a pending divorce is not as settled as appellant maintains.

{¶16} Nonetheless, the record before us reveals that appellant did not raise the issues of service or in personam jurisdiction regarding appellee's show cause motion either to the magistrate or via his objections to the decision of the magistrate. Civ.R. 53(D)(3)(b)(iv) provides that "[a] party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusion * * * unless the party has objected to that finding or conclusion * * *." See, e.g., *Kademenos v. Mercedes-Benz of North America, Inc.* (March 3, 1999), Stark App.No. 98CA50. Civ.R. 53 requires the

objections be specific. *North v. Murphy* (March 9, 2001), Tuscarawas App.No. 2000AP050044. Accordingly, we find appellant's present challenges to the contempt finding to be waived. We are further disinclined to invoke the doctrine of plain error under these circumstances. Cf. *Diment v. Diment*, Guernsey App.No. 05 CA 37, 2006-Ohio-5295, ¶ 12 (declining to apply plain error where contemnor had not raised Civ.R. 53 objections to the magistrate's property division contempt findings).

{¶17} Appellant's First and Second Assignments of Error are therefore overruled.

III.

{¶18} In his Third Assignment of Error, appellant challenges (1) the trial court's conclusion that he had committed financial misconduct and (2) the court's decision to order appellant to make a lump sum payment of $4,962.00 to appellee as a result[1].

{¶19} An appellate court generally reviews the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. Furthermore, as an appellate court, we are not the trier of fact. Our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his or

---

[1] Because appellant's brief quotes from *Ebner v. Ebner,* Stark App.Nos. 2007CA00318, 2007CA00346, 2008-Ohio-5335, our initial understanding was that appellant had also alleged the trial court had improperly considered financial misconduct in its calculation of spousal support. However, the divorce decree at issue does not specifically reveal a reliance on financial misconduct in the court's redress of spousal support. Therefore, we herein do not need to reach the *Ebner* decision in our analysis.

her judgment. *Tennant v. Martin-Auer,* 188 Ohio App.3d 768, 936 N.E.2d 1013, 2010-Ohio-3489, ¶ 16, citing *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA-5758, 1982 WL 2911. It is well-established that the trier of fact is in a far better position to observe the witnesses' demeanor and weigh their credibility. See, e.g., *Taralla v. Taralla,* Tuscarawas App.No. 2005 AP 02 0018, 2005-Ohio-6767, ¶ 31, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.

{¶20} Pursuant to R.C. 3105.171(B), "[i]n divorce proceedings, the court shall ... determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section." R.C. 3105.171(E)(4) states that "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." In *Orwick v. Orwick,* Jefferson App.No. 04 JE 14, 2005-Ohio-5055, the court recognized "there are many forms of financial misconduct, and whether or not a party committed such misconduct is largely dependent on the specific facts of the case." Id. at ¶ 30.

{¶21} R.C. 3105.171(C)(1) further states: "Except as provided in this division or division (E)(1) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section."

**{¶22}** In the case sub judice, the magistrate concluded in pertinent part as follows:

**{¶23}** "Defendant is found to have engaged in financial misconduct as follows: 1) for the amount of $597.00 and $466.00 which represent funds wrongfully taken by Defendant while under the temporary order; 2) for the amount of $1,600.00 which represents two checks from YRC earned by Defendant but not deposited into the joint account; 3) for the amount of $1,800.00 which represents sums wrongfully taken from the parties' savings account after Defendant was served with divorce papers; 4) for the amount of $3,009.00 which represents Defendant's vacation pay. Said sums total $7,472.00." Magistrate's Decision at 13.

**{¶24}** The temporary order issued in this case stated that the parties were required to deposit their monies into a joint account and that the monies could only be used for household and living expenses. Regarding the $7,472.00 the trial court found attributable to appellant's financial misconduct, appellant presently contends either that there was no evidence that he used the funds for something other than household and living expenses or that there was in general no showing of financial misconduct. However, the record provides evidence that the parties had agreed to set an $80.00 per week limit on spending/withdrawals, which the magistrate was free to believe or disbelieve. Furthermore, appellant himself admitted to withdrawing $800.00 immediately after the temporary orders hearing and subsequently transferring $1,000.00 from the home equity line of credit to his personal account. Appellant also admitted to failing to deposit more than $3,000.00 in vacation pay because he wanted to repay a loan from his father.

**{¶25}** Viewing the award in its entirety, we do not find the trial court abused its discretion in dividing the parties' marital property and in awarding appellee a lump sum monetary distribution. See *Koegel v. Koegel* (1982), 69 Ohio St.2d 355, 432 N.E.2d 206 (emphasizing that a trial judge should be given wide latitude in dividing property between the parties).

**{¶26}** Appellant's Third Assignment of Error is overruled.

IV.

**{¶27}** In his Fourth Assignment of Error, appellant contends the trial court abused its discretion in setting spousal support and in declining to retain jurisdiction thereon. We disagree.

**{¶28}** A trial court's decision concerning spousal support may only be altered if it constitutes an abuse of discretion. See *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore*, supra.

**{¶29}** R.C. 3105.18(C)(1)(a) thru (n) provides the factors that a trial court is to review in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support:

**{¶30}** "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

**{¶31}** "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code; (b) The relative earning abilities of the parties; (c) The ages and the physical, mental, and emotional conditions of the parties; (d) The retirement benefits of the parties; (e) The duration of the marriage; (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; (g) The standard of living of the parties established during the marriage; (h) The relative extent of education of the parties; (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought; (l) The tax consequences, for each party, of an award of spousal support; (m) The lost income production capacity of either party that resulted from that party's marital responsibilities; (n) Any other factor that the court expressly finds to be relevant and equitable."

**{¶32}** Unlike the statute concerning property division, R.C. 3105.18 does not require the lower court to make specific findings of fact regarding spousal support awards. While R.C. 3105.18(C)(1) does set forth fourteen factors the trial court must consider, if the court does not specifically address each factor in its order, a reviewing

court will presume each factor was considered, absent evidence to the contrary. *Carroll v. Carroll*, Delaware App.No. 2004-CAF-05035, 2004-Ohio-6710, ¶ 28, citing *Watkins v. Watkins*, Muskingum App. No. CT 2001-0066, 2002-Ohio-4237, (additional citations omitted).

**{¶33}** R.C. 3105.18(E) mandates that a trial court must specifically reserve jurisdiction in its divorce decree or a separation agreement incorporated into the decree in order to modify a spousal support award. The decision of whether to retain such jurisdiction is a matter within the domestic relations court's discretion. *Smith v. Smith* (Dec. 31, 1998), Lucas App. No. L-98-1027, citing *Johnson v. Johnson* (1993), 88 Ohio App.3d 329, 331, 623 N.E.2d 1294.

**{¶34}** In the case sub judice, the trial court awarded the appellee $1,000.00 per month spousal support "in the nature of a temporary award," with the final award of $1,800.00 per month to commence one year later, with said amount to continue for 64 months, terminable upon death or remarriage. The trial court did not retain jurisdiction over the issue of spousal support.

**{¶35}** According to the record, appellant was fifty-three years of age at the time of the divorce, and is a high school graduate. He has had to obtain ongoing medical treatment for two chronic ulcers of the left leg, but he is nonetheless able to work in his occupational field of truck driving. The trial court concluded that appellant's earnings as a driver with YRC Corporation (a merger of Roadway Express and Yellow Freight) were as follows: 2006 = $78,482.61; 2007 = $85,239.53; 2008 = $86,484.57. However, in March 2009 appellant was laid off or offered fewer loads by YRC. As of July 18, 2009, appellant had earned the sum of $25,927.47 from YRC for the 2009 tax year. He

subsequently began earning $29,000.00 per year with Falcon Trucking. Appellant was living with his father at the time of trial at a boarding cost of $350.00 per month.

{¶36} Appellee's earnings were found as follows: 2007 = $23,169.00; 2008 = $20,394.00; 2009 = $24,686.00. Appellee continues to work as a bookkeeper. She testified that she had obtained health insurance through her employer at a cost of $380.00 per month. Tr. at 87. She testified that she needs $2,500.00 to cover her expenses. Tr. at 118. She stated that after taxes her monthly income is approximately $1,600.00. Id.

{¶37} The crux of appellant's argument is that the trial court utilized an unreasonable calculation of the parties' incomes. He notes the court used appellant's income from 2006, 2007 and 2008, but used appellee's income from 2007, 2008 and 2009. Appellant urges that if we accept he made just approximately $37,000 in 2009, his average salary for the preceding three years drops to $69,574.70, versus the $83,000.00 the trial court utilized. Appellant maintains that he was projected to make only $29,000.00 in 2010. He urges that because the trial court did not retain jurisdiction over the spousal support issue, he has no recourse should his income not rise dramatically in the present economy. Appellant also points out that the parties had developed a standard of living prior to this action that was apparently well beyond their means, resulting in bankruptcy and discharge of approximately $60,000.00 in credit card debt. See Tr. at 136.

{¶38} However, the trial court reviewed the statutory factors and concluded, inter alia, that a $29,000.00 wage projection for appellant was not substantiated. The trial court found that although appellant's recent work changes were not proven to be a

result of him intentionally separating himself from YRC, he had nonetheless turned down or neglected several cognizable offers of employment at wages somewhat similar to what he was used to at YRC. The trial court also stated it was balancing appellant's need to find better employment with appellee's need for income and health insurance. We herein indulge in the presumption the court considered all the statutory factors (*Carroll,* supra), and we are unpersuaded upon review of the record that the court abused its discretion in its award of spousal support.

**{¶39}** Appellant's Fourth Assignment of Error is therefore overruled.

**{¶40}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, Stark County, Ohio, is affirmed.

By: Wise, J.

Farmer, P. J., and

Edwards, J., concur.

_____

_____

_____

JUDGES

JWW/d 0316

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


PATRICIA SANO                              :
                                           :
    Plaintiff-Appellee                 :
                                           :
-vs-                                       :            JUDGMENT ENTRY
                                           :
JOSEPH SANO                                :
                                           :
    Defendant-Appellant                :            Case No. 2010 CA 00252


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, Stark County, Ohio, is affirmed.

Costs assessed to appellant.


                            _____


                            _____


                            _____

                                            JUDGES