[Cite as *Dean v. Dean*, 2011-Ohio-2401.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 95615

## DAVID DEAN

PLAINTIFF-APPELLEE

vs.

## BEVERLY DEAN

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. D-293630

**BEFORE:** Sweeney, J., Stewart, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** May 19, 2011

**ATTORNEY FOR APPELLANT**

Joyce E. Barrett, Esq.
800 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113

**ATTORNEY FOR APPELLEE**

Michael R. Gareau, Jr., Esq.
Michael R. Gareau & Assoc., Co., L.P.A.
23823 Lorain Road, Suite 200
North Olmsted, Ohio 44070

JAMES J. SWEENEY, J.:

{¶ 1} Defendant-appellant Beverly Dean ("wife") appeals the lower court's granting plaintiff-appellee David Dean's ("husband") motion to modify spousal support, denying her motion to show cause as to why husband should not be held in contempt of court for failing to pay spousal support as ordered, and denying her motion for attorney fees. After reviewing the facts of the case and pertinent law, we affirm.

{¶ 2} Husband and wife divorced on May 9, 2006, after 40 years of marriage. In the divorce proceedings, the court equitably divided the marital assets and ordered husband to pay wife $3,000 per month for spousal support. Additionally, the court found that, "[b]ecause of [husband's] precarious health and employment situations, the court shall retain jurisdiction to modify the amount and the term" of the spousal support.

**{¶ 3}** On December 1, 2008, husband lost his job after 18 years of employment with IBM. Husband received six months of severance pay in exchange for waiving his right to sue IBM for employment related issues. Husband began looking for a new job in December of 2008. On December 4, 2008, husband filed a motion to modify spousal support, "given the fact that he is no longer employed."

**{¶ 4}** Husband paid wife spousal support as ordered through May of 2009, coinciding with his six-month severance pay. As of June of 2009, husband's job search remained unsuccessful. Husband applied for unemployment compensation benefits ("unemployment") and began receiving approximately $1,600 per month. Also in June of 2009, husband "dropped" his spousal support payment "down to $100 a month * * *." According to husband, he did this because unemployment was his only income, and he "wanted to show the court that [he] was trying to be in good faith." Additionally, the magistrate noted that husband was seeking relief from the court because he was "deathly afraid" about running out of money.

**{¶ 5}** On July 2, 2009, wife filed a motion to show cause, alleging that husband should be held in contempt of the court's order to pay spousal support, as he was $2,950 in arrears. Wife also requested reimbursement of her attorney fees and costs.

**{¶ 6}** On August 14, 2009, husband voluntarily dismissed his December 4, 2008 motion to modify spousal support and filed a new motion to modify spousal support, adding that his severance pay had expired.

**{¶ 7}** On August 28, 2009, wife filed a motion for attorney fees and costs associated with defending husband's motion to modify spousal support.

**{¶ 8}** Husband stopped receiving unemployment the week of February 21, 2010, when he had hip surgery, which rendered him unable to work and ineligible for benefits.

**{¶ 9}** The court held a hearing on the parties' various motions, and on April 22, 2010, the magistrate issued a decision concluding the following: effective August 14, 2009, husband's obligation to pay wife spousal support was reduced to $250 per month; effective February 21, 2010, spousal support was suspended; the court retained jurisdiction to further modify the support order; husband was not in contempt of court because "the elimination of [his] employment made it impossible for him to comply with the Court's support order * * *"; husband owed wife $8,057.50 in spousal support arrearage, taking into consideration the modification; wife was not entitled to recover her attorney fees from husband because there was no finding of contempt and husband was successful in modifying the support order.

**{¶ 10}** Wife filed objections to the magistrate's decision, arguing that the court erred in reducing the spousal support order, failing to find husband in contempt, and failing to award

her attorney fees. On August 11, 2010, the court overruled wife's objections and adopted the magistrate's decision.

{¶ 11} Wife appeals and raises three assignments of error for our review.

{¶ 12} "I. The trial court erred and abused its discretion in modifying appell[ee]'s spousal support obligation from $3,000 per month to zero."

{¶ 13} We review spousal support issues under an abuse of discretion standard. See *Dunagan v. Dunagan*, Cuyahoga App. No. 93678, 2010-Ohio-5232, ¶12. The Ohio Supreme Court has held that "a trial court lacks jurisdiction to modify a prior order of spousal support unless the decree of the court expressly reserved jurisdiction to make the modification and unless the court finds (1) that a substantial change in circumstances has occurred and (2) that the change was not contemplated at the time of the original decree." *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, ¶33.

{¶ 14} R.C. 3105.18(C)(1)(a)-(n) aids courts in determining whether spousal support should be awarded and, if so, the amount of the award. "When considering a motion to modify a spousal support order, the trial court need not reexamine all the factors listed in R.C. 3105.18(C)(1). The court need only consider the factors which have actually changed since the last order." *Mizenko v. Mizenko* (June 7, 2001), Cuyahoga App. No. 78409. R.C. 3105.18(F) states that a change in circumstances "includes, but is not limited to, any increase

or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses."

{¶ 15} In the instant case, the May 9, 2006 divorce decree expressly reserved jurisdiction to modify the spousal support order: "Because of [husband's] precarious health and employment situations, the court shall retain jurisdiction to modify the amount and term."

{¶ 16} Wife argues that husband's loss of his job at IBM was "contemplated" at the time of the original decree, thus, under *Mandelbaum*, the court had no jurisdiction to modify the order. Wife alleges that it is clear from the divorce decree that husband anticipated losing his job.

{¶ 17} In *Kaput v. Kaput*, Cuyahoga App. No. 94340, 2011-Ohio-10, ¶20, this court rejected the argument that the husband "contemplated" a decrease in his income and business "at the time of the divorce [when] he painted a picture of doom and gloom for the future of his company." The *Kaput* opinion reasoned that the word "contemplate" in *Mandelbaum* meant more than "think about"; rather, a party had to "intend" that an event happen for it to preclude a modification of spousal support. Id. at ¶22.

{¶ 18} Other Ohio courts have likewise adopted an expanded interpretation of the word "contemplate," holding that divorce decrees may specify conditions or events that would trigger possible modification of a support order. See, e.g., *Ballas v. Ballas*, Mahoning App.

No. 08MA166, 2009-Ohio-4965, ¶39.   In *Ballas*, the Seventh District Court of Appeals of Ohio reasoned that "a trial court should be able to reserve jurisdiction for further consideration of a specific issue if it finds that it is unable to adequately predict the timing, extent and impact of a foreseeable change.   Otherwise a trial court would lack jurisdiction to revisit the issue precisely because it found that it would be necessary to do so."   Id. at ¶43.

{¶ 19} In the instant case, the magistrate found "no evidence that the elimination of [husband's] job was purposely brought about by [husband] * * *."   Contrary to wife's argument, the magistrate found that the phrase "precarious health and employment situations" suggests that "the Court intended that [husband] have an opportunity to seek a reduction in support should a change in his health or employment occur. * * * The Magistrate declines to accept [wife's] argument that the Court foresaw that [husband] would lose his job three years hence and contemplated that [husband] should not have even an opportunity to bring that fact to the Court's attention.   That result would be fundamentally unfair."

{¶ 20} The magistrate found that a modification of spousal support was proper under *Mandelbaum*, because jurisdiction was expressly reserved and a complete loss of employment income was "about as drastic and material a change as could occur."   The magistrate next analyzed the R.C. 3105.08(C)(1) factors that changed since the divorce.

{¶ 21} At the time of the divorce, husband was ordered to pay wife $3000 per month in spousal support based on his income of approximately $150,000 per year and wife's annual

income of approximately $6000 from part time work at a preschool.  Wife did not appeal this order, nor did she, at any time, file a motion to modify the amount.

{¶ 22} At the time of the magistrate's decision, husband was 63 and had health issues, including "a degenerative hip condition, which required replacement surgery * * * and a chronic prostate condition that requires regular monitoring." However, the magistrate found that husband was still capable of working.  Husband's 2009 income was $24,606.36, of which $14,738.36 was residual income from IBM and the remainder was from unemployment.  However, his income had since decreased to zero because he was unable to find work and ineligible for unemployment until he recovered from hip surgery.  When unemployment was restored, husband would receive $1,612 per month.  The magistrate found that husband "credibly testified that he has searched continuously and diligently for work" within his field and other related areas "all over the country."

{¶ 23} Husband owned two pieces of real property that he acquired in the divorce, with a combined mortgage balance of $537,500 and monthly payments of approximately $3700. Both houses were on the market for sale, and had been since 2006.  Prior to losing his job, husband saved most of the assets he acquired in the divorce.  However, beginning in the summer of 2009, husband "has been spending down assets to meet his financial obligations."

{¶ 24} At the time of the magistrate's decision, wife was 62 and capable of working. After the divorce, she moved to Florida and worked part time at Disney World.  Her 2009

income was $8,418.81. Since the divorce, wife has been spending down her share of the marital assets and borrowing off credit cards. Wife had experience in the cosmetology field but failed to look for full time employment. Specifically, the magistrate found that wife "did not impress as putting forth a great deal of effort to independently meet her financial needs. If she worked another day or two, presumably she could double her earnings."

{¶ 25} The magistrate concluded the following:

{¶ 26} "[I]t is not equitable under the circumstances that [husband] should shoulder the weight of being the main support of two households. The Court is mindful than an award of this magnitude when [husband] has no employment income could only be maintained by the liquidation of his assets. This would serve to allow [wife] to maintain her standard of living while not permitting [husband] that same consideration. The Court finds the order is simply unsustainable under the present circumstances and is no longer appropriate or reasonable."

{¶ 27} The magistrate modified the support to $250 per month for the time husband received unemployment and suspended the award while husband was ineligible for unemployment due to hip surgery.

{¶ 28} Wife argues that husband had the assets from which to pay her spousal support, because "the payment of spousal support is not confined simply to future income." As authority for this argument, wife cites to R.C. 3105.18(B), which states in part that "[a]n award of spousal support may be allowed in real or personal property, or both, or by decreeing

a sum of money, payable either in gross or by installments, from future income or otherwise, as the court considers equitable."

{¶ 29} In essence, wife argues that husband's ability to pay should be weighed more heavily than husband's loss of job in determining the modified amount of spousal support. Wife cites no law, nor could we find any, to support an interpretation of R.C. 3105.18(B) requiring one ex-spouse to spend down his or her half of the marital assets to support the other ex-spouse indefinitely. In fact, R.C. 3105.18(C)(1)(a) and (i) instruct the court to consider the parties' income and "relative assets and liabilities" for spousal support determinations. Furthermore, R.C. 3105.18(F) includes an "involuntary decrease" in a party's income as a change in circumstances. Specific to the case at hand, a 100 percent decrease, also known as an elimination, certainly qualifies as a "substantial" change.

{¶ 30} In the divorce, wife received her share of marital assets, such as retirement benefits husband accrued while working at IBM. At the time of the magistrate's decision, wife's interest in the IBM retirement plan was $107,258.88. Additionally, she will receive one half of the IBM 401(K) benefits accrued during the marriage at distribution. At the time of the magistrate's decision, these benefits were valued at $303,000. Furthermore, wife received the cash equivalent of one half the equity in the real property that husband now owns, subject to mortgage loans, as well as one half of the proceeds from the sale of the marital residence.

{¶ 31} Husband received his share of the marital assets from the divorce, and mandating that he now dip into this share of these assets to pay spousal support would be akin to "drawing twice from the same well." *Heller v. Heller*, Franklin App. No. 07AP-871, 2008-Ohio-3296, ¶19 (holding that "'double-dip' refers to the double counting of a marital asset, once in the property division and again in the [spousal support] award," which constitutes an abuse of discretion) (internal citations omitted). But, see, *Briskey v. Briskey* (July 23, 1998), Cuyahoga App. No. 73368 (holding that a $36,572 annual pension awarded to the wife as a marital asset was considered income in determining that neither party should pay or receive spousal support).

{¶ 32} Husband's assets are a factor to consider under R.C. 3105.18(C)(1), but they are not the sole determinant. Cf. R.C. 3105.171(C)(3) (requiring that marital assets be divided "prior to making an award of spousal support * * *and without regard to any spousal support so awarded"). In *Bachman v. Bachman*, Trumbull App. Nos. 2001-T-0132, and 2001-T-0133, ¶72, the court stated that R.C. 3105.171(C)(3) "reveals a clear intent by the General Assembly to stop the trial court from combining the award of marital property and the spousal support award."

{¶ 33} We cannot say that the court abused its discretion by reducing and/or suspending husband's obligation to pay spousal support based on his loss of employment and income. See, e.g., *Tissue v. Tissue,* Cuyahoga App. No. 83708, 2004-Ohio-5968 (finding the

court acted within its discretion when it reduced husband's spousal support obligation from $1,775 to $750 per month based on husband's decreased income from $116,000 to $66,000 per year, as a result of taking early retirement after his employer was taken over by another company); *Schaaf v. Schaaf*, Medina App. No. 05CA0060-M, 2006-Ohio-2983, ¶12 (finding a substantial change of circumstances justifying a decrease in spousal support when husband's "salary has involuntarily decreased from $72,500 at the time of the divorce to $66,500").

**{¶ 34}** In wife's second assignment of error, she argues as follows:

**{¶ 35}** "II. The trial court erred and abused its discretion in failing to find appellee in contempt of court."

**{¶ 36}** We review a trial court's ruling in a contempt proceeding for an abuse of discretion. *Goldberg v. Goldberg*, Cuyahoga App. Nos. 86590 and 86588, 2006-Ohio-1948, ¶15. "Contempt is defined in general terms as disobedience of a court order. A prima facie case of contempt is established when the divorce decree is before the court along with proof of the contemnor's failure to comply with it. Once a prima facie case is shown, the burden shifts to the contemnor to present evidence of his inability to pay or any other defenses that may be available to him." Id.

**{¶ 37}** In the instant case, wife argues that husband "mounted the weak defense that he could not pay spousal support since his income from employment had ceased, and he was receiving only unemployment compensation." The court found husband's defense of "the

elimination of [his] employment income" strong enough to make it "impossible for him to comply with the Court's support order * * *." Therefore, the court did not find him in contempt; however, it ordered him to pay an arrearage of $8,057.50 based on the modified support order.

{¶ 38} Given that inability to pay is a valid defense to a prima facie case of contempt, we find that the court acted within its discretion and wife's second assignment of error is overruled.

{¶ 39} Wife's third and final assignment of error states the following:

{¶ 40} "III. The trial court erred and abused its discretion in failing to award appellant any attorney fees."

{¶ 41} Specifically, wife argues that she is entitled to attorney fees under R.C. 3105.18(G) and 3105.73(B).

{¶ 42} R.C. 3105.18(G) states that if a party is found in contempt for failing to pay ordered spousal support, the court "shall require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt."

{¶ 43} In the instant case, R.C. 3105.18(G) does not apply because there was no finding of contempt.

**{¶ 44}** R.C. 3105.73(B) states that a court may award reasonable attorney fees associated with a post-decree motion arising from a divorce proceeding "if the court finds the award equitable.   In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets."

**{¶ 45}** In the instant case, husband has no income and he was successful in his post-decree motion to modify spousal support.   We find no abuse of discretion in the court's decision to deny wife's request that husband pay her attorney fees.   Wife's third and final assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

JAMES J. SWEENEY, JUDGE

MELODY J. STEWART, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR