OPINION
{¶ 1} Respondent-appellant Christopher L. Myers appeals from the January 5, 2005, Domestic Violence Civil Protection Order issued by the Muskingum County Court of Common Pleas, Domestic Relations Division. Petitioner-appellee is Annette R. Myers.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant and appellee were husband and wife, in the process of divorce. On December 7, 2004, appellee Annette R. Myers filed a Petition for a Domestic Violence Civil Protection Order. Based upon this Petition, the trial court issued an Ex Parte Domestic Violence Civil Protection Order that same day and scheduled the matter for a full hearing.
 {¶ 3} A hearing on appellee's Petition was held on January 3, 2005. On January 5, 2005, the trial court issued an Order of Protection.
 {¶ 4} It is from that Order of Protection that appellant appeals, raising the following assignment of error:
 {¶ 5} "THE TRIAL COURT ERRED IN GRANTING THE PETITION FOR DOMESTIC VIOLENCE CIVIL PROTECTION ORDER AS SUCH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF THE TRIAL COURT'S DISCRETION."
 {¶ 6} "A. THE PETITIONER FAILED TO SHOW THAT THE RESPONDENT COMMITTED DOMESTIC VIOLENCE BY COMMITTING A VIOLATION OF OHIO REVISED CODE SECTION 2903.211, MENACING BY STALKING.
 {¶ 7} "B. THE PETITIONER FAILED TO SHOW THAT THE RESPONDENT COMMITTED DOMESTIC VIOLENCE BY PLACING HER BY THE THREAT OF FORCE IN FEAR OF IMMINENT SERIOUS PHYSICAL HARM."
 {¶ 8} Appellant maintains in his sole assignment of error that the trial court abused its discretion when it issued the civil protection order and that the civil protection order was against the manifest weight of the evidence. We disagree.
 {¶ 9} The decision whether to grant a civil protection order lies within the sound discretion of the trial court. Olenik v.Huff, Ashland App. No. 02-COA-058, 2003-Ohio-4621, at ¶ 21. Therefore, an appellate court should not reverse the decision of the trial court absent an abuse of discretion. In order to find an abuse of discretion, this court must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 10} We further note that a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E.Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279,280, 376 N.E.2d 578. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v. Garson, 66 Ohio St.3d 610,1993-Ohio-9, 614 N.E.2d 742. The underlying rationale for giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Seasons Coal Co. v. City of Cleveland
(1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 11} When granting a protection order, the trial court must find that the petitioner has shown by a preponderance of the evidence that the petitioner or the petitioner's family or household members are in danger of domestic violence. Felton v.Felton (1997), 79 Ohio St.3d 34, 679 N.E.2d 672, paragraph two of the syllabus. "Domestic violence" is defined as "the occurrence of one or more of the following acts against a family or household member:
 {¶ 12} "(a) Attempting to cause or recklessly causing bodily injury;
 {¶ 13} "(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 [menacing by stalking] or 2911.211 [aggravated trespass] of the Revised Code;
 {¶ 14} "(c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code." R.C. 3113.31(A)(1).
 {¶ 15} In this case, appellee alleged and the trial court found that appellant had committed domestic violence by committing a violation of R.C. 2903.211, menacing by stalking.[1] See R.C. 3113.31(A)(1)(b). Revised Code 2903.211 defines menacing by stalking, as follows, in relevant part:
 {¶ 16} "(A)(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
 {¶ 17} After hearing evidence, the trial court granted the Petition, making the following findings:
 {¶ 18} The Court makes the following findings of fact: "Respondent has engaged in a pattern of conduct to wit: following Petitioner calling Petitioner, driving past Petitioner's home, publishing Petitioner's phone number and derogatory comments about her in public places, entering into petitioner's residence which has caused Petitioner to be fearful for her safety and has caused Petitioner mental distress.
 {¶ 19} "The Court further finds by a preponderance of the evidence: 1) that the Petitioner or Petitioner's family or household member(s) are in danger of or have been a victim of domestic violence, as defined in Ohio Revised Code 3113.31(A), committed by Respondent; and 2) the following orders are equitable, fair, and necessary to bring about a cessation or prevention of domestic violence against the family or household member(s) named in the Petition."
 {¶ 20} Appellant contends that appellee failed to show that appellant committed menacing by stalking. As stated previously, menacing by stalking is defined as knowingly causing another person to believe that the offender will cause physical harm to the other person or causing mental distress to the other person. R.C. 2903.211.
 {¶ 21} In this case, appellee testified that appellant has driven by her home and her place of employment repeatedly,[2] shown up where she was having lunch, and driven by appellee's friends' and relatives' homes while she was at those homes. In general, appellee testified to facts that demonstrated that appellant has watched her and known where she was located. For example, in one instance, appellee and her daughter were visiting appellee's parents' home in Guernsey County and they left to visit appellee's aunt's house, two or three miles away. The house is located on a dead end road. One or two hours later, appellee's aunt's phone rang. Appellee answered. Appellee identified the caller as appellant, although there was static in the line. Appellant asked to speak with appellee and described appellee as the "adulteress whore that's at your house." Tr. at 10.
 {¶ 22} Appellee also testified that her house had been broken into on numerous occasions. In particular, appellee testified that she believed appellant broke into her home between Thanksgiving and December of 2004. Appellee testified that she believed it was appellant that broke in because "the only thing that was taken was my spare set of car keys, a letter that he [appellant] had left in the mailbox for me that I was going to use for court, and some things were moved around on the counter. And I had business cards with my new phone numbers written on them on the counter and they were moved and jostled around, and a Victoria's Secret bag that had pajamas that was moved was on the counter, but nothing else was taken." Tr. at 22.
 {¶ 23} In addition, appellee testified that she has received many phone calls from appellant and many hang up calls, many of which appellee believes were made by or on behalf of appellant. One of the reasons she believed appellant was responsible for the calls was that on two occasions, appellee had changed her phone numbers and the calls had stopped. However, once appellant's mother got the new phone number, the calls began again. Further, on a second occasion, appellee had once again changed her phone numbers and the calls had stopped. However, after her home was broken into, and her new phone numbers were on a business card on the counter, the calls started again.
 {¶ 24} Appellee also testified that someone had written appellee's phone number and a suggestive, derogatory note on a mensroom stall at a local bar. Subsequently, appellee received several obscene phone calls. Appellee testified that she believed that the notation had been written by appellant because appellant admitted that he was in the bar on the morning that a photo of the notation was taken. At that time, it was noticed that freshly written notations were on the stalls that had not been there the night before. These notations were also suggestive and derogatory towards appellee. Appellee also testified that, in her opinion, the notations were in appellant's handwriting.
 {¶ 25} Appellee further testified regarding a note which she found in her mailbox. Appellee identified the handwriting as appellant's handwriting. The note purported to be a love letter from another man. The note included statements about how that other man looked forward to sexual interludes with appellee and how he had appellee while appellee's husband (appellant) did not.
 {¶ 26} Appellee testified that as a result of appellant's behavior and conduct, she was "frightened." TR. at 23. Appellee further stated that since her house was broken into, she puts a chair in front of the door every night. Id. Appellee further asserted that appellant has a hard time controlling his anger and the fact that appellant "could rip a door open and break two chains that are on a door kind of frightens me what he could do." Tr. at 24. Appellee further testified that "I changed my work patterns for places that I work. I'm just tired of seeing him drive by wherever I am and it can be across two, three counties, it doesn't matter. I'm always looking over my shoulder. I can't sleep, especially now that my house has been broken into. It just frightens me on what can happen." Tr. at 25.
 {¶ 27} At the time of the hearing, appellant was in jail for contempt, generally involving the same behavior at issue in the Petition for a Civil Protection Order. Appellee stated that since appellant has been jailed for contempt, which involved this same behavior to some extent, appellee has been more relaxed. However, she recognized that appellant will be released. When asked what was her fear if the trial court did not issue the protection order, appellee replied as follows: "He's already angry. He doesn't feel that he's done anything wrong. Even though he's in jail for doing something wrong, he is going to be so angry at me. I feel this behavior is going to be incredibly worse and I'm fearful for that." Tr. at 25.
 {¶ 28} Appellant testified on his own behalf. Appellant attempted to explain some of his conduct.
 {¶ 29} At the conclusion of the hearing, the trial court made the following observations and conclusions concerning the parties' testimony:
 {¶ 30} "As I have said in the divorce case, any one of these acts by respondent, Mr. Myers, taken in and of itself is very harmless. Taken as a whole with one coincidence stacked on top of another coincidence on top of another, and the credibility of Mr. Myers trying to explain these coincidences, there is no doubt in my mind that the petitioner has sustained her burden that the defendant has knowingly engaged in a course of conduct which reasonably makes the petitioner — makes her believe she's in fear for physical harm. She testifies, and there is no evidence to the contrary. What a cold record cannot disclose is the conduct of the parties in the courtroom.
 {¶ 31} "This Court clearly finds that the petitioner, just by her body language, her voice, is in fear and is suffering mental distress and, further, finds that the respondent, by his testimony, is just equally aggressive, and even the testimony that you gave, Mr. Myers, you gave in such a fashion I think reasonable people could be fearful based on your conduct. Months and months of adverse behavior has got to indicate to somebody such as petitioner that there is a substantial risk of physical harm to her at some point down the road." Tr. at 60-62.
 {¶ 32} Upon review, we find that the trial court did not abuse its discretion when it issued the civil protection order and that the civil protection order was not against the manifest weight of the evidence. Appellee testified to a pattern of conduct by appellant that the trial court found caused appellee to fear for her safety and caused mental distress to appellee. The trial court found appellee to be credible. On the other hand the trial court found appellant to be aggressive to the point that reasonable people could be fearful. We agree with the trial court that appellee showed by a preponderance of the evidence that appellant committed menacing by stalking. Cf. State v.Benner (1994), 96 Ohio App.3d 327, 330-31, 644 N.E.2d 1130
(allegations that defendant followed victim twice and drove around victim's apartment complex to watch her were sufficient to state a violation of R.C. 2903.211); Cleveland v. Rhoades (July 29, 1999), Cuyahoga App. No. 74572, unreported (five separate occasions of uninvited visits sufficient to support stalking conviction under R.C. 2903.211); State v. Woodgeard (Apr. 29, 1994), Fairfield App. No. 45-CA-SEP-1993, unreported (defendant's acts of driving past victim's home and making harassing phone calls supported stalking conviction).
 {¶ 33} In his merit brief, appellant further contends that appellee failed to show that appellant committed domestic violence by placing appellee by threat of force in fear of imminent serious physical harm. In this case, appellant requested the protection order based upon an assertion that appellant had committed menacing by stalking. It was upon that basis that the trial court issued the protection order. Whether a respondent committed domestic violence by placing the petitioner by threat of force in fear of imminent serious physical harm is an alternative basis upon which a protective order could be based. Because this court has affirmed the trial court's decision that appellee met her burden to demonstrate that the protection order was warranted due to a showing that appellant committed menacing by stalking, appellant's assertion that appellee failed to show that appellant placed appellee by threat of force in fear of imminent serious physical harm is moot.
 {¶ 34} Accordingly, the judgment of the Muskingum County Court of Common Pleas, Domestic Relations Division is affirmed.
Edwards, J., Hoffman, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Muskingum County Court of Common Pleas, Domestic Relations Division, is affirmed. Costs assessed to appellant.
[1] Appellee stated the following in the petition:
"Respondent [appellant] has engaged in the following acts(s) of domestic violence:
"Continued stalking of myself (and daughter) at my residence, work, friends and family residence and shopping. These have occurred in counties of Muskingum, Licking and Guernsey. Continually [sic] phone harassment since May '04 causing me to change my phone numbers on 3 occasions. Unlawful entry of my residence in September '04. My home was broken into around Thanksgiving. Notes being left in my mail box. . . ."
[2] A review of the transcript reveals that most, if not all, of the evidence presented at the hearing on the CPO was presented in a prior contempt hearing in the divorce proceeding. According to the transcript, appellant had been found in contempt on three occasions, the most recent of which resulted in appellant being jailed. The trial court indicated that although the evidence was being presented at the hearing on the CPO, it was also presented at the hearing that resulted in the third finding of contempt and appellant being jailed.