[Cite as *In re Contempt of Feng*, 2011-Ohio-4810.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 95749

## IN RE: CONTEMPT OF
## LU-JEAN FENG

In the matter styled:
Bruce E. Berger, Plainfiff-Appellee
vs.
Lu-Jean Feng, Defendant-Appellant

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case Nos. D-279920 and D-333284

**BEFORE:** Rocco, J., Blackmon, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** September 22, 2011

**ATTORNEYS FOR APPELLANT**

William T. Wuliger
The Brownwell Building
1340 Sumner Court
Cleveland, Ohio 44115

Joyce E. Barrett
800 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113

Michael J. Maillis
Perantinides & Nolan Co., L.P.A.
300 Courtyard Square
80 South Summit Street
Akron, Ohio 44308

**ATTORNEYS FOR APPELLEES**

**For Bruce E. Berger**

Joseph G. Stafford
Gregory J. Moore
Stafford & Stafford Co., L.P.A.
55 Erieview Plaza, 5th Floor
Cleveland, Ohio 44114

**For Cuyahoga County Domestic Relations Court**

William D. Mason
Cuyahoga County Prosecutor
9th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

**For Guardian ad litem**

Barbara A. Belovich
Kronenberg & Belovich Law, LLC
Suite 605
Cleveland, Ohio 44113

KENNETH A. ROCCO, J.:

{¶ 1} Defendant-appellant Dr. Lu-Jean Feng appeals from the order entered by the Cuyahoga County Court of Common Peas, Domestic Relations Division judge (the "DR court") that found her in contempt for failing to abide by prior court orders that were issued with respect to both a petition for domestic violence and the terms of a Shared Parenting Plan ("SPP").

{¶ 2} Feng presents five assignments of error. She argues the judge that issued the contempt order lacked jurisdiction to do so, the DR court did not permit her an opportunity to present a defense, the order is not supported by the evidence, the DR court made evidentiary rulings that denied her due process of law, and the purge condition was an "impossible" one with which to comply.

{¶ 3} Upon a review of the record, this court finds none of Feng's arguments has merit. The trial court's order, consequently, is affirmed.

{¶ 4} The original underlying case, assigned DR-279920, commenced in 2001, when Feng's ex-husband, plaintiff-appellee Dr. Bruce Berger, filed a complaint seeking a divorce. The case was assigned to Judge Timothy Flanagan, but, in an order dated February 11, 2004, Judge Flanagan voluntarily removed himself from the case and referred it to a visiting judge.

{¶ 5} The visiting judge issued a final decree of divorce on December 29, 2004. The decree incorporated an SPP for the couple's two minor children, i.e., a daughter born in 1988 and a son born in 1994. By the SPP's terms, Berger was the residential parent and had "final decision-making authority on all issues" when the parties could not agree. In relevant part, the SPP provided that, during the summer, the parents had alternating full-week possession periods, the exchanges would be on Fridays at 6:00 p.m., and for all other times not specifically set forth, Berger had possession of the children.

{¶ 6} In February 2009, when the parties' son was 16-years old, Feng filed motions to modify the allocation of parental rights and responsibilities and to modify child support.[1] Berger responded by filing, inter alia, motions to show cause and requests for attorney fees. The DR court appointed Barbara A. Belovich to act as both guardian ad litem and attorney for the

---

[1]By this time, the parties' daughter was emancipated.

parties' son.

{¶ 7} The matters proceeded to a trial before a magistrate, held over several weeks in the autumn of 2009. Before the magistrate issued a decision, the visiting judge became unavailable. Since Judge Flanagan had retired from the court, the administrative judge reassigned the case to herself for a ruling on the "judgment entry."

{¶ 8} On June 17, 2010 the magistrate issued a decision denying Feng's motions. Feng requested an extension of time to file objections to the decision, which was granted.

{¶ 9} On August 9, 2010, attorney William Wuliger filed a notice that he was being substituted as the son's attorney in place of attorney Belovich. Wuliger also filed a motion on behalf of the son to set aside the magistrate's report and recommendations.

{¶ 10} On August 13, 2010, Berger filed an "emergency motion for the immediate return" of his son. Berger attached his affidavit, and asserted Feng failed to return the parties' son on August 1, as required by the SPP.

{¶ 11} On August 16, 2010, the visiting judge recused himself from the divorce case. On August 19, 2010, the administrative judge issued a journal entry noting the foregoing development, and assigning the divorce case to another judge's docket "(via electronic **Judge** roll) to resolve all pending and

future issues." (Emphasis in original.) See Loc.R. 2(A)(3). On August 25, 2010, attorney Wuliger, purporting to be acting as the son's attorney, filed an objection to the assignment.

{¶ 12} On August 26, 2010, the DR court issued a journal entry that granted Berger's emergency motion for the return of his son. The court noted therein that the existing SPP remained in effect "while the pending objections filed with regard to the Magistrate's Decision of June 17, 2010 are considered." The DR court ordered Feng to "immediately return the parties' minor child" to Berger's possession.

{¶ 13} On September 8, 2010, Berger filed a Petition for a Domestic Violence protection order (a "CPO") against Feng, which was assigned Case No. DV-333284; this is the underlying case to the instant appeal. The administrative judge issued an order "pursuant to Loc.R. 26(A)(3)" noting that the divorce case had been "assigned" to a particular judge, and it was "in the best interest of continuity" to "reassign Case No. DV 333284 to the docket" of that same judge. Following an ex parte hearing, the DR court granted the petition.

{¶ 14} The September 8, 2010, CPO prevented Feng from having any contact with Berger and their son, and also suspended her visitation rights with her son. The order further required the son to attend the Hyde School

in Connecticut. Berger had chosen this school for their son over Feng's opposition. The CPO prohibited Feng from preventing or interfering with the son's attendance at Hyde.

{¶ 15} By September 16, 2010, Wuliger was representing Feng; he filed on her behalf a petition for a CPO against Berger; this petition was assigned Case No. DV-333399. The DR court made no determination on this petition.

{¶ 16} On September 20, 2010, a full hearing began on Berger's domestic violence petition. Since the substitution-of-counsel notice for the son was filed without leave and because the son already had representation, the DR court prohibited Wuliger from acting as the son's counsel. Wuliger thereupon stated he was acting as Feng's attorney.

{¶ 17} During this hearing, Feng testified that her son had been missing since September 8. Feng also testified that she did not know his whereabouts. At the close of the hearing, the DR court nevertheless ordered Feng to produce the son the next day, or Feng would be held in contempt of court.

{¶ 18} The following day when proceedings resumed, the DR court issued a written order requiring Feng to produce the son in court by 4:00 p.m. The hearing proceeded. The son failed to appear.

{¶ 19} At that time, the DR court found Feng in contempt and sentenced

her to three days in jail. The court found that Feng was deliberately withholding the son's location. The court also required Feng to reappear on September 24, 2010 but told Feng she could purge the contempt by producing the son.

**{¶ 20}** Feng's attorney, Wuliger, immediately filed the instant appeal. Feng's sentence was stayed, and she was released from jail on September 22, 2010 after posting bond.[2] The record indicates that the parties' son was located on September 26, 2010 and that he returned to Berger's custody.[3]

**{¶ 21}** The record further reflects that the outstanding issues in the underlying three cases could not thereafter immediately be resolved by the DR court because Feng filed an affidavit of disqualification with the Chief Justice of the Ohio Supreme Court on November 19, 2010. The supreme court denied the application on February 13, 2011.

**{¶ 22}** Feng appeals from the contempt finding in DV-333284 and presents five assignments of error.

---

[2] The record reflects that, in spite of the filing of the instant appeal, proceedings resumed on September 24, 2010 with the son's whereabouts still unknown. The hearing, however, halted when Feng's attorney accused the DR court of prejudging the issues and asked for her recusal.

[3] On October 29, 2010, despite his status as Feng's attorney, Wuliger filed a petition in this court for a writ of habeas corpus on the son's behalf. See App. No. 95941.

{¶ 23} "I.   Because the trial court was improperly assigned to this case, the contempt order issued was voidable.

{¶ 24} "II.   The trial court abused its discretion in holding Appellant in summary contempt with no opportunity to present a defense.

{¶ 25} "III.   The evidence was insufficient to support the trial court's contempt finding and/or the contempt finding was against the manifest weight of the evidence.

{¶ 26} "IV.   The trial court abused its discretion vis - a - vis erroneous evidentiary decisions which effectively denied Appellant her constitutional right to due process of law.

{¶ 27} "V.   The trial court abused its discretion in ordering a purge condition that was unreasonable and impossible to comply with."

{¶ 28} Feng argues in her first assignment of error that, because her *divorce* case was originally assigned to a particular judge of the DR court, the *divorce* case should have been transferred to his successor, rather than assigned again by electronic roll.   She contends the new assignment violated the Ohio Supreme Court Rules of Superintendence and the Local Rules of the Cuyahoga County Domestic Relations Court.   Based on this contention, Feng

maintains that the DR court that presided over the *instant* case was never properly assigned and, as a result, its judgment is voidable. Feng's argument is rejected for the following reasons.

{¶ 29} First, Feng filed her notice of appeal only from the contempt citation. That citation was issued in DV-333284, not in the underlying divorce case. This court lacks jurisdiction to rule on matters not set forth in the notice of appeal. App.R. 12(A)(1)(a); see also, *Myers v. Myers*, Muskingum App. No. CT2005-0005, 2005-Ohio-7040.

{¶ 30} Second, the record reflects the administrative judge complied with the local rules of court in dealing with Berger's petition. Loc.R. 26(A)(3) provides:

{¶ 31} "A Petition for Domestic Violence which is being filed post-decree shall be *assigned to a new judge and new case number at the time of filing*. * * * the ex parte hearing on the Petition for Domestic Violence shall be before the judge who has continuing jurisdiction over the divorce/legal separation unless that Judge is unavailable." (Emphasis added.)

{¶ 32} Berger's petition in the instant case received a new case number and was assigned to the administrative judge. The administrative judge then determined that Berger's petition, DV-333284, should be assigned for hearing to the same judge to whom the underlying divorce case had been

assigned.   Since this procedure complied with the local rules, Feng's argument fails.

{¶ 33} Third, the record reflects Feng never objected to the assignment, either in the underlying divorce action or in the instant case.   Wuliger filed an objection in the divorce case, but it purported to be only on the son's behalf; Wuliger did not at that time represent Feng.

{¶ 34} Under these circumstances, Feng waived the argument she presents in her first assignment of error.   *Buttolph v. Buttolph*, Wayne App. No. 09CA0003, 2009-Ohio-6909, ¶13-14.   It is, accordingly, overruled.

{¶ 35} Feng next argues that the DR court erred by failing to afford her any opportunity to present a defense to the contempt citation.   In so arguing, Feng asserts the DR court wrongly deemed the matter to involve "direct" contempt, when it could only have been indirect contempt.   Both the argument and the assertion are misplaced.

{¶ 36} Contempt is defined as a disregard of, or disobedience to, an order or command of judicial authority.   *State v. Flinn* (1982), 7 Ohio App.3d 294, 455 N.E.2d 691.   This court cannot reverse a finding of contempt by a trial court unless that court abused its discretion.   *State ex rel. Ventrone v. Birkel* (1981), 65 Ohio St.2d 10, 417 N.E.2d 1249.

{¶ 37} An abuse of discretion consists of more than an error of judgment;

it connotes an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary. *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 616 N.E.2d 218. In applying this standard of review, an appellate court is not free to substitute its judgment for that of the trial court. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181, citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301.

**{¶ 38}** In *Strauss v. Strauss*, Cuyahoga App. No. 94129, 2010-Ohio-6166, ¶9-10, this court recently distinguished direct and indirect contempt as follows:

**{¶ 39}** "A court may find the offending party in contempt for either direct or indirect actions that constitute disobedience to an order. *Pirtle v. Pirtle*, 2nd Dist. No. 18613, 2001-Ohio-1539. While a direct contempt occurs *within the court's presence or with the court's personal knowledge of facts relating to the act*, indirect contempt is 'misbehavior that occurs outside the actual or constructive presence of the court.' Id. One accused of *indirect* contempt is entitled to a 'hearing on the charge, at which the court must investigate the charge, hear any answer or testimony that the accused makes or offers, and then determine whether the accused is guilty.' Id.

**{¶ 40}** "Although punishment is inherent in contempt, courts will categorize the penalty as either civil or criminal *based on the character and*

*purpose of the punishment.   In re J.M.*, 12th Dist. No. CA2008-01-004, 2008-Ohio-6763, citing *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 416 N.E.2d 610.   While criminal contempt is characterized by an *unconditional* prison sentence, civil contempt is marked by remedial or *coercive* punishment, doled out for the 'benefit of the complainant.'   Id." (Emphasis added.)

{¶ 41} The importance of classifying the types of contempt is thus the effect the classification has on the rights of the contemnor.   Direct contempt of court occurs in a way so closely related to the court itself that a finding may occur summarily; the court is not required to deal with direct contempt by providing the contemnor with a hearing.   *In re Purola* (1991), 75 Ohio App.3d 306, 596 N.E.2d 1140.

{¶ 42} In contrast, indirect contempt of court does not occur in the presence of the court, and a hearing is required to provide the contemnor with the opportunity to explain his actions.   Furthermore, if the indirect contempt is criminal in nature, then intent to defy the court must be proven beyond a reasonable doubt.   *Brown v. Executive 200, Inc.*

{¶ 43} A sanction for civil contempt allows the contemnor to purge himself of the contempt.   *Tucker v. Tucker* (1983), 10 Ohio App.3d 251, 461 N.E.2d 1337.   Once the contemnor complies with the court's order, the

purpose of the contempt sanction has been achieved and the sanction is discontinued. *Cleveland v. Ramsey* (1988), 56 Ohio App.3d 108, 110, 564 N.E.2d 1089.

{¶ 44} In this case, the DR court specifically found Feng to be in "direct, civil contempt" for failing to ensure the son came to the CPO hearing. The DR court conducted the CPO hearing mainly to ensure the son's welfare. To that end, the DR court permitted Feng to purge the contempt by producing the son so that the DR court could determine for itself that the son was safe.

{¶ 45} Since the DR court found Feng to be in direct civil contempt, it was not required to conduct a hearing to permit Feng to present a defense, and did not abuse its discretion in failing to do so. *Brown v. Executive 200, Inc.*

{¶ 46} Feng's second assignment of error, accordingly, also is overruled.

{¶ 47} Feng's third and fifth assignments of error present related issues; therefore, they will be addressed together.

{¶ 48} In her third assignment of error, Feng argues the DR court's contempt finding lacked an adequate evidentiary basis. In her fifth, she argues that the "purge condition," i.e., that she produce the son for the second day of the CPO hearing, was "impossible," because she testified she did not know his whereabouts. These arguments are unpersuasive.

**{¶ 49}** A finding of direct, civil contempt must be based upon clear and convincing evidence. Id. Feng testified that she had custody of the parties' son for the summer of 2010, and she admitted that she failed to return the son to Berger on August 1, 2010, as required under the SPP's terms and the June 17, 2010 magistrate's order. Feng also admitted she failed to return the son to Berger as required by the DR court order of August 26, 2010.

**{¶ 50}** Feng also testified the son was at her home on September 8, 2010. Feng claimed that he simply "disappeared" sometime in the afternoon of that day. Although she admitted receiving text messages from him, she further claimed she "did not know where he was."

**{¶ 51}** The DR court, however, found Feng's credibility wanting. Other than informing the police about the son's supposed disappearance, Feng had done nothing else to locate him and continued to go to work as usual. In light of Feng's complete lack of concern over her son's whereabouts, and the fact that at that point, he had been missing for twelve days, the DR court found Feng's assertion that she could not secure his presence simply unbelievable.

**{¶ 52}** This court cannot substitute its judgment on matters of credibility. *Montgomery v. Montgomery*, Scioto App. Nos. 03CA2924 and 03CA2925, 2004-Ohio-6926, ¶25. Since the DR court's contempt finding is

supported by clear and convincing evidence in the record, Feng's third assignment of error also is overruled.

{¶ 53} With respect to the punishment imposed, the DR court afforded Feng the  opportunity to purge herself of contempt merely by bringing her son to the CPO hearing.  Feng, as the contemnor, "carried the keys of her prison in her own pocket," since the court advised her she would be freed if she agreed to produce her son as so ordered.  Id.

{¶ 54} In contempt proceedings, a reviewing court places great reliance upon the discretion of the judge, both in her finding of contempt and in the penalty imposed.  *Offenberg v. Offenberg*, Cuyahoga App. Nos. 78885, 78886, 79425 and 79426, 2003-Ohio-269, ¶77, citing *Arthur Young v. Kelly* (1990), 68 Ohio App.3d 287, 294, 588 N.E.2d 233.  For the same reason this court determines the finding is supported by the evidence in the record, the DR court's purge condition cannot be found to constitute an abuse of discretion. *Montgomery*, ¶47.

{¶ 55} Accordingly, Feng's fifth assignment of error also is overruled.

{¶ 56} Feng argues in her fourth assignment of error that the DR court wrongly excluded during the CPO hearing evidence that was crucial to her defense against Berger's petition. [4]  This argument, however, bears no

---

[4] The  record  reflects  the  court  refused  to  permit  Feng,  during  her

relation to her citation for contempt, which is the only issue before this court. Therefore, this court declines to address it. Feng's fourth assignment of error is overruled.

**{¶ 57}** The DR court's order finding Feng in direct, civil contempt is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

PATRICIA ANN BLACKMON, P.J., CONCURS;
MELODY J. STEWART, J., DISSENTS
(SEE ATTACHED DISSENTING OPINION)

MELODY J. STEWART, J., DISSENTING:

---

cross-examination of Berger, to enter into evidence email communications she claimed were from her son to Berger, and to play a surreptitiously-recorded "mediation" held between the parties, their son, and a family friend. Feng contends the evidence at issue was admissible under Evid.R. 801(D)(2)(a), 803(5)(a), and R.C. 2710.03(B).

{¶ 58} I respectfully dissent with the majority decision to affirm. I find that the second assignment of error has merit and would, accordingly, reverse the finding of contempt.

{¶ 59} Direct contempt is that which occurs in the presence of the court and is immediately punishable. *State v. Belcastro* (2000), 139 Ohio App.3d 498, 501, 744 N.E.2d 271. Indirect contempt occurs when a party engages in conduct outside the presence of the court that demonstrates a lack of respect for the court or its lawful orders. If the contemptuous action occurs outside the presence of the court, the court must afford the accused a hearing, at which he will have an opportunity to be heard, by himself or through his counsel. R.C. 2705.03.

{¶ 60} The parties dispute the nature of Feng's contempt: the court and Berger believe Feng engaged in direct contempt for failing to have the child appear at the September 24 hearing and could be summarily punished; Feng claims that the contempt was related to a court order to have the child appear; hence, it was an indirect contempt that could be punished only after a hearing.

{¶ 61} Although the court had entered an order requiring Feng to produce the child, it is plain that the court intended to coerce Feng to bring the child to court. A sanction imposed for civil contempt is remedial or coercive in nature and is imposed for the benefit of the

complainant. *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 253; *Bierce v. Howell*, 5th Dist. No. 06 CAF 05 0032, 2007-Ohio-3050, ¶8. In such a case, notice that apprises the alleged contemnor of the nature of the charge against him so that he may prepare a defense is sufficient for due process purposes. *Cincinnati v. Cincinnati Dist. Council 51, Am. Fedn. of State, Cty. & Mun. Employees* (1973), 35 Ohio St.2d 197, 203, 299 N.E.2d 686. Any sanction imposed for civil contempt must afford a contemnor the right to purge himself of the contempt. Id.

{¶ 62} On September 21, the court issued a written order requiring Feng to produce the child by 4 p.m. When the child did not appear by that time, the court found Feng in contempt and sentenced her to three days in jail on grounds that Feng was deliberately withholding the child's location. The court also required Feng to appear before the court on September 24, but told Feng that she could purge the contempt by producing the child.

{¶ 63} The court's act of placing purge conditions in its order demonstrates that it found Feng in contempt in order to coerce her into producing the child. *Brown*, 64 Ohio St.3d at 254. Although it characterized Feng's contempt as "direct," that was a misnomer. Had the court intended simply to punish Feng for a direct contempt, it would not have allowed her to purge the contempt. Plainly, by giving Feng the opportunity to purge, the court was coercing her into giving up whatever knowledge she had on the child's whereabouts, thus

making it an indirect contempt.

{¶ 64} It follows that Feng was entitled to a hearing before a finding of contempt and being jailed. See *State v. Local Union 5760, United Steelworkers of Am.* (1961), 172 Ohio St. 75, 79, 15 O.O.2d 133, 173 N.E.2d 331 (before making a finding of indirect contempt, hearing, and notice are required). The court's failure to afford the necessary hearing was a violation of Feng's right to due process and is reversible error.