[Cite as *Berger v. Feng*, 2012-Ohio-1041.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 96513

## BRUCE E. BERGER

PLAINTIFF-APPELLEE/
CROSS-APPELLANT

vs.

## LU-JEAN FENG

DEFENDANT-APPELLANT/
CROSS-APPELLEE

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. D-279920

**BEFORE:** Kilbane, J., Stewart, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** March 15, 2012

**ATTORNEY FOR APPELLANT**

William T. Wuliger
The Brownell Building
1340 Sumner Court
Cleveland, Ohio 44115

**ATTORNEYS FOR APPELLEE**

**For Bruce E. Berger**

Joseph G. Stafford
Gregory J. Moore
Anne C. Fantelli
Stafford & Stafford Co., L.P.A.
55 Erieview Plaza, 5th Floor
Cleveland, Ohio 44114

**For E.B.**

Joseph P. McCafferty
2001 Crocker Road
Suite 130
Westlake, Ohio 44145

**Also Listed**

Barbara A. Belovich
Kronenberg & Belovich Law, L.L.C.
636 West Lakeside Avenue
Suite 605
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

**{¶1}** Appellant Lu-Jean Feng ("Feng"), the mother of E.B., appeals from the order of the trial court that denied her motion to modify her shared custody plan. For the reasons set forth below, we affirm.

**{¶2}** Feng and appellee, Bruce E. Berger ("Berger"), were married on February 14, 1982, and had two children, a daughter who is now emancipated and a son, E.B., who was born in 1994. On April 26, 2001, Berger filed a complaint for divorce. The trial court issued a final decree of divorce on December 29, 2004, which incorporated the parties' unsigned agreed shared parenting plan. Under this agreement, Berger was the primary possessory parent and residential parent for school purposes, and Feng had possession of E.B. every other weekend during the school year and for alternating weeks during the summer. The agreed shared parenting plan also gave the father "final decision-making authority on all issues" when the parties could not agree.

**{¶3}** Although the agreement was unsigned, the record indicates, and the magistrate concluded, the parties followed the provisions of this document.

**{¶4}** In February 2009, after the parties' daughter had become emancipated, Berger completed an application for E.B. to attend The Hyde School ("Hyde"), in Connecticut. Feng filed motions to modify the allocation of parental rights and responsibilities and to modify child support, in which she asserted that it was in E.B.'s

best interest to live with her and to attend school in the Cleveland area. Berger responded by filing, inter alia, a motion to show cause and request for attorney fees, and the court appointed Barbara A. Belovich to act as both guardian ad litem ("GAL") and attorney for E.B.

{¶5} In a report dated October 22, 2009, the GAL opined that E.B. should "remain in his father's care with respect to school placement and that he be afforded the opportunity to continue at the Hyde School." The GAL noted that E.B. had repeatedly and vehemently expressed that he wanted to live with his mother and attend school in the Orange School District, but the GAL informed the court that Hyde is an exceptional school with a committed faculty that was "deeply invested in making him succeed."

{¶6} The matter proceeded to hearing before a magistrate on various dates from October through December 2009. The evidence indicated that E.B. was 15 years old at the start of the hearing. At the time of the parties' 2004 divorce, he was attending Gross Schechter School ("Schechter") and was also attending counseling until July 2009. According to his former mathematics tutor, the middle school principal of Schechter, and the GAL, E.B. experienced difficulty with his peer relationships, was immature and sensitive, and had personal issues that affected his school performance. E.B. also had difficulty focusing, appeared distracted, and did not always turn in his homework assignments. His grades were inconsistent, worsened since the parties' divorce, and did not reflect his true academic potential or intelligence. The principal acknowledged that

E.B. performs better when he is in a smaller environment and receives more one-to-one attention.

{¶7} While he was in the seventh grade, E.B. experienced difficulties with another student and transferred to the Shaker Heights School District to complete seventh grade. E.B. returned to Schechter for eighth grade. He subsequently failed eighth grade mathematics and had few friends.

{¶8} Testing suggested that E.B. may have attention deficit disorder. After a series of meetings with a counselor, however, this diagnosis was discounted. Feng refused to attend any of the meetings pertaining to this issue.

{¶9} Following the completion of his studies at Schechter,[1] E.B. told his mathematics tutor that he wanted to attend school in the Orange School District and live with his mother. Berger discussed the matter with E.B.'s counselor, who did not testify, and educational consultants who reportedly recommended that E.B. attend boarding school. Berger and E.B. subsequently visited various out-of-state boarding schools. Feng opposed the idea of E.B. attending school out-of-state, however, and wanted him to attend a private school in Ohio or repeat eighth grade in the Orange School District.

{¶10} Berger ultimately decided that it would be in E.B.'s best interest to attend Hyde, in Woodstock, Connecticut, because of its academic programs, character-based focus, and peer group intervention program. Berger stated that E.B. liked the school during his first visit there, but changed his mind after Feng voiced her objections.

---

[1]Schechter does not offer high school classes.

Without Feng's consent, Berger enrolled E.B. in Hyde for his ninth grade year. Berger acknowledged that because of E.B.'s school activities and the school's distance from Feng's home, Feng would not be able to visit with E.B. under the terms outlined in the agreed parenting plan. He also admitted that school rules prohibit E.B. from having a cell phone.

{¶11} Berger also expressed concern that Linda Haas ("Haas") and her husband were residing with Feng. He complained that Haas accompanied Feng during a visit with E.B. at Hyde, after which E.B. was taken from the school without the knowledge or permission of school authorities. He also believed that Haas was inappropriate and manipulative of E.B.

{¶12} Berger acknowledged that E.B. repeatedly stated that he missed his mother, wanted to live with her, and wanted to attend either Hawken School or Orange School District. Berger also admitted that after Feng completed an application for E.B. to attend University School, he called the principal and informed him that Feng did not have authority to determine where E.B. would attend school.

{¶13} Berger testified that E.B. is doing well academically and socially at Hyde. His behavior has been constructive and productive, but Berger acknowledged that he would like E.B. to progress more quickly.

{¶14} E.B. testified that he does not like Hyde and does not want to return there. He likes his teachers but believes that the school stresses effort over achievement. He stated that a few of his fellow students had bullied him, and he was moved to a different

room following an altercation with a student.   E.B. maintained that he does not fit in at Hyde and feels stressed, but he also noted that he plays soccer, does community service projects through his Discovery Group, and has meetings to resolve interpersonal conflicts.

{¶15} The GAL testified that Feng was opposed to E.B. receiving therapy, and E.B. did not make progress in therapy.   According to the GAL, E.B.'s biggest problem was with peer interactions, and he behaves differently with each parent.   After discussing the matter with E.B.'s counselor, the GAL learned that E.B. might benefit from a school that was located away from his home. She visited Hyde, met with faculty members, and determined that it offered the structure and opportunity for peer acceptance that E.B. needs, and it would also teach him how to get along with others.

{¶16} The GAL additionally testified that E.B. frequently states that he wants to live with his mother, and that Feng urged her to initiate an investigation as to whether Berger had molested E.B.   The GAL spoke with E.B. and with his counselor, and ultimately concluded that this claim lacked credibility and was being advanced by Feng. The GAL also believed that Feng had undermined her by informing E.B. that she would retain another attorney for him.   The GAL opined that Berger's decisions for E.B. are better than those of Feng.   In her view, the decision to enroll E.B. at Hyde would remove him from his parents' disputes and offered a solution for E.B.'s issues.

{¶17} Jianzhong Jin testified that she has looked after E.B. in Feng's home since December 1994.   According to this witness, E.B. does not like Hyde.   He is not a troubled boy and the choice of school should not be determined with regard to this issue.

**{¶18}** Haas testified that she and her husband are temporarily residing in Feng's home while their home is being renovated. According to this witness, Feng has arranged for various tutors for E.B. and spent a great deal of time helping him with his schoolwork. He is cheerful and happy with his mother, and they take him to movies, sporting events, and to play golf. On occasions when E.B. has requested additional time with his mother, Berger refused to permit it.

**{¶19}** Haas further testified that E.B. became distraught when he learned that his father was taking him to Hyde. She admitted that after E.B. went to Hyde, she sent him a text message informing him that they would get him his own attorney.

**{¶20}** In March or April 2009, Feng and Berger discussed sending E.B. to the Beachwood School District. Feng later learned that Berger had completed an application for E.B. to attend Hyde. Feng testified that she researched the school and informed Berger that she did not believe that it was right for E.B. According to Feng, the school is for children who are troubled, and the academics are not at grade level. At this point, E.B. wanted to attend Hawken School, but Berger withdrew that application.

**{¶21}** Feng additionally stated that E.B.'s attendance at Hyde interferes with her visitation, and that although he can leave the campus during the day on Saturdays and Sundays, he has to return each evening.

**{¶22}** Feng stated that she wants what is best for E.B., and believes that under her care, E.B.'s grades and social skills can improve because his key problem is lack of organization. She stated that she does not believe that Hyde can improve E.B.'s social

interactions because there are only nine children in his class and there are mostly upperclassmen at the school. She stated that E.B. would benefit from ordinary discipline, rather than enrollment at a distant boarding school, and she stated that she filed the motion to modify as a result of E.B.'s requests to live with her.

{¶23} Feng admitted that she and Haas removed E.B. from Hyde and returned with him to Cleveland without informing school officials or Berger. She also admitted that various experts have opined that Berger should remain the residential parent of E.B.

{¶24} Feng testified that she does not visit E.B. at Hyde because she cares for her 95-year-old father. Feng admitted that she has a strained relationship with her daughter, and that her daughter believes that E.B. is at the center of a protracted parental dispute.

{¶25} The magistrate issued a decision on June 17, 2010. The magistrate took note of Feng's objection that the original agreed shared parenting plan was never signed, but noted that the parties had abided by this document for six years and that it is incorporated into an order of the court. The magistrate additionally noted that the shared parenting plan indicates that in the event that the parties could not agree about E.B.'s school placement, Berger is authorized to make that decision. The magistrate found that there had been a change in the circumstances of E.B., that Feng's actions have not been in E.B.'s best interest, and that the potential harm from a reallocation of parental rights and responsibilities would not be outweighed by the advantages of such modification.

{¶26} Specifically, the magistrate found that Feng improperly set into motion abuse allegations against Berger, improperly removed E.B. from Hyde and concealed his

whereabouts, that Feng did not have an accurate perception of the issues facing E.B., and that her actions "bordered on alienation" of E.B.'s affection for his father. The magistrate additionally found that Berger did not enroll E.B. at Hyde in order to willfully deny Feng parenting time, but rather, to meet E.B.'s social and academic needs. The magistrate acknowledged that E.B. had continued difficulty with peer relationships and made a disturbing remark about remaining at Hyde, but he did not find it to be credible.

{¶27} On February 9, 2011, the trial court adopted the magistrate's decision in its totality. Extensive proceedings followed the February 9, 2011 judgment. *See In re Contempt of Feng*, 8th Dist. No. 95749, 2011-Ohio-4810. In relevant part, the trial court granted Berger's emergency motion for return of E.B., entered a civil protection order preventing Feng from having contact with Berger and E.B., ordered E.B. to attend Hyde, ordered that Feng not interfere with E.B.'s attendance there at Hyde, and further, found Feng in contempt. *Id.* Herein, Feng appeals from the June 17, 2010 judgment that adopted the magistrate's decision upholding Berger's enrollment of E.B. at Hyde in Connecticut. Feng raises seven errors for our review. Berger cross-appeals, assigning three errors for our review.

## I. FENG'S APPEAL

{¶28} For her first assignment of error, Feng maintains that by permitting Berger to keep E.B. enrolled at Hyde in Connecticut, the trial court in effect modified the parties' agreed shared parenting plan to deprive her of parenting time during the school year.

**{¶29}** We review trial court judgments involving the allocation of parental rights and responsibilities for an abuse of discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 1997-Ohio-260, 674 N.E.2d 1159.

**{¶30}** The modification of a parenting decree is governed by R.C. 3109.04. Where the modification to a shared parenting plan does not involve reallocation of parental rights, the court may modify the plan based upon a finding that the change is in the best interest of the children under R.C. 3109.04(E)(2)(b). *Lord v. Lord*, 8th Dist. No. 89395, 2008-Ohio-230. Where, however, the modification involves a substantial change in parental rights, we apply R.C. 3109.04(E)(1)(a). *Id.*, citing *Rodkey v. Rodkey*, 8th Dist. No. 86884, 2006-Ohio-4373.

**{¶31}** We find that this matter involves a substantial change in parental rights.[2] R.C. 3109.04(E)(1)(a) provides:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
>
> * * *

---

[2]In any event, a determination of the best interest of the child, with its focus upon the mental health of the child, must be made under either analysis.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶32} In determining that the modification is necessary to serve the best interest of the child, one must consider the factors set forth in R.C. 3109.04(F), which includes the parents' wishes; the child's interaction with his family and others; the child's adjustment to home, school, and community; the mental and physical health of all parties; and which parent is most likely to honor court-ordered visitation. R.C. 3109.04(F)(1).

{¶33} Applying all of the foregoing to this matter, we find no abuse of discretion. As noted by the lower court, a change occurred in the circumstances of the child. However, following a thorough review of the extensive evidence of record and detailed analysis of the issues set forth in R.C. 3109.04, the court concluded that Feng's proposed modification of parental rights was not necessary to serve the best interest of the child, and the harm likely to be caused by a change of environment was not outweighed by the advantages of the change of environment.

{¶34} The trial court noted that E.B.'s school performance and interaction with his family and the community had been fraught with difficulty since the time of the parties' divorce. Since going to Hyde, he had "not yet found his comfort zone," but he described various activities that he enjoyed, and he seemed to like his teachers. Moreover, Feng did not advance a clear plan for meeting E.B.'s educational or other needs while in her custody.

{¶35} The court also outlined the parties' experiences with therapy, noted that Feng did not support various efforts made to obtain help for E.B., and that she "set in motion" abuse allegations.

{¶36} In addition, the court noted that Feng filed a motion for a psychological evaluation of E.B., specifically requesting that the court appoint Dr. Steven Neuhaus, Ph.D. All of the parties participated in his evaluation, and it appears that he prepared a report; yet, as the court noted with amazement, Feng chose not to call him as a witness and "was vehemently opposed" to having him testify. Dr. Neuhaus never submitted a report or testified regarding his evaluation of E.B. Without this psychological evaluation, the court accepted the GAL's report as the final report prepared in the matter. The court could only wonder about the contents of the report or the reasons behind Feng's refusal to introduce it into evidence.

{¶37} Finally, the court determined that Feng was unlikely to honor court-ordered visitation since she had, without notifying Berger or Hyde officials, removed E.B. from the school, took him to Cleveland, and delayed speaking with police about the matter. She also completed school applications for him without the knowledge or consent of Berger. Based upon the foregoing, and upon our review of the record as a whole, we conclude that the trial court acted well within its discretion in retaining Berger as the residential parent and denying Feng's motion to reallocate parental rights and responsibilities. The first assignment of error is without merit.

**{¶38}** In her second assignment of error, Feng maintains that the judgment of the trial court is contrary to the manifest weight of the evidence.

**{¶39}** For the reasons set forth in our discussion of the first assignment of error, we conclude that there is competent, credible evidence to support the trial court's conclusions. *Seasons Coal Co. Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). This assignment of error is therefore without merit.

**{¶40}** In her third assignment of error, Feng argues that trial court erred in refusing to remove the GAL, whose opinion differed from that of E.B.

**{¶41}** A trial court has broad discretion in appointing and removing a GAL. *See* Civ.R. 75(B); R.C. 3109.04(B)(2); *Gabriel v. Gabriel*, 6th Dist. No. L-08-1303, 2009-Ohio-1814.

**{¶42}** The role of a GAL is to investigate the ward's situation and then to ask the court to do what the guardian feels is in the ward's best interest. *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 232, 479 N.E.2d 257 (1985). The role of an attorney, however, is to zealously represent his client within the bounds of the law. *Id.*

**{¶43}** Sup.R. 48(D) provides:

> (8) When a guardian ad litem determines that a conflict exists between the child's best interest and the child's wishes, the guardian ad litem shall, at the earliest practical time, request in writing that the court promptly resolve the conflict by entering appropriate orders.

**{¶44}** Herein, we note that Barbara Belovich was appointed to serve as both the GAL and counsel for E.B. on April 9, 2009. Following that appointment, the GAL recommended that he attend Hyde in Connecticut and "remain in his father's care with

respect to school placement." The GAL acknowledged that this recommendation conflicted with E.B.'s stated desire to live with his mother and attend the Orange School District, but she discounted this conflict due to E.B.'s lack of maturity. The record clearly supports the belief that E.B. lacks maturity, and the record also indicates that E.B. initially liked Hyde, and that he likes his teachers and school activities.

{¶45} In addition, as noted below,

> the Magistrate notes that in almost every case in which the allocation of parental rights and responsibilities are at issue, one of the parties will not be in agreement with the guardian ad litem's recommendation. It would cause havoc if the individual were allowed to declare a conflict between the guardian ad litem and the child. Neither parent, therefore[,] should be given that power.

{¶46} From the foregoing, and in light of our determination that the trial court's denial of Feng's motion to reallocate parental rights was in the best interest of E.B., we are unable to conclude that the trial court abused its discretion or that it committed reversible error in refusing to remove Barbara Belovich as E.B.'s attorney. The third assignment of error is without merit.

{¶47} For her fourth assignment of error, Feng maintains that the trial court erred in refusing to enforce its pretrial ex parte order that prohibited the parties from removing the child from the court's jurisdiction for more than 14 days. She also complains that the trial court erred in refusing to enforce the provisions in the agreed parenting plan that granted her possessory parenting time with E.B. every other weekend. She further complains that the trial court erred in refusing to enforce its order compelling Berger to appear for deposition.

{¶48} As to the first contention, we note that an appellate court will not reverse a trial court's decision in a contempt proceeding absent a showing of an abuse of discretion. *Willis v. Willis*, 149 Ohio App.3d 50, 2002-Ohio-3716, 775 N.E.2d 878, ¶ 59 (12th Dist.).

{¶49} In this matter, the record reveals that on July 23, 2009, Feng filed a motion for a temporary restraining order to prohibit Berger from removing E.B. from the court's jurisdiction, and the court in turn prohibited Berger from taking E.B. out of the jurisdiction for any time period in excess of 14 days. Ultimately, however, the court determined that by operation of the shared parenting agreement, in the event that the parties were unable to agree, Berger would have final decision-making authority over the issue of E.B.'s school placement. Further, as the court later noted, further delay on this issue would have prevented the child from continuing his high school education. In addition, because Attorney Belovich, in her role as GAL, opined that the Hyde school was in E.B.'s best interest, we find no abuse of discretion in connection with the trial court's refusal to find Berger in contempt of court for enrolling E.B. in Hyde.

{¶50} With regard to the trial court's failure to enforce its order compelling Berger to appear for deposition, we note that a trial court has discretion over matters pertaining to discovery, and an appellate court will reverse the decision of a trial court that extinguishes a party's right to discovery if the trial court's decision is improvident and affects the discovering party's substantial rights. *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 1996-Ohio-265, 664 N.E.2d 1272.

**{¶51}** In this matter, the record does not reveal that the decision of the trial court extinguished a party's right to discovery. It does not appear to be improvident and, in light of the extensive testimony offered at trial, did not affect Feng's substantial rights.

**{¶52}** With regard to Feng's complaint that the trial court failed to enforce the provisions in the agreed parenting plan that granted her possessory parenting time with E.B. every other weekend, we note that we review this ruling for an abuse of discretion. *See DiFranco v. DiFranco*, 8th Dist. No. 87269, 2006-Ohio-5010.

**{¶53}** Here, the magistrate found as follows:

> [E.B.'s] enrollment in Hyde School has impacted both Dr. Berger's and Dr. Feng's parenting time. * * * The magistrate finds that Dr. Feng has made no inquiries with the Hyde administrators regarding her exercising parenting time with [E.B.]. The Magistrate finds that Dr. Feng has not sought the help of Dr. Berger in working with the Hyde administration to support her continued parenting time with [E.B.]. The Magistrate finds that Dr. Berger made the decision to enroll [E.B.] in Hyde School

because he believed the school best suited [E.B.'s] needs. The Magistrate finds that Dr. Feng did not support this decision and as a result denied [E.B.] time with her. The Magistrate finds that Dr. Feng is capable of traveling to Hyde, when she wants to go, she choose [sic] not to go because she does not agree with [E.B.'s] enrollment at [the] school. Therefore, the Magistrate finds that as a result, that no finding of contempt is being made herein because Dr. Feng has done nothing to attempt to have any regular contact with [E.B.] since his enrollment at Hyde.

{¶54} These findings are fully supported in the record. Therefore, the trial court did not err in refusing to enforce the provisions in the agreed parenting plan that granted her possessory parenting time with E.B. every other weekend. In accordance with the foregoing, this assignment of error is without merit.

**{¶55}** In her fifth assignment of error, Feng argues that the trial court erred in quashing subpoenas that she issued to Berger's mental health professionals.

**{¶56}** A trial court has broad discretion in discovery matters, including whether to grant or deny a motion to quash a subpoena, and its decision will not be reversed on appeal absent an abuse of discretion. *Hogan v. Hogan*, 12th Dist. App. Nos. CA2002-09-225 and CA2002-09-216, 2003-Ohio-4747.

**{¶57}** Feng notes that in *Gill v. Gill*, 8th Dist. No. 81463, 2003-Ohio-180, this court held that a party seeking custody of a child in a divorce action makes his or her mental and physical condition an issue to be considered by the court in awarding custody and that the physician-patient privilege does not apply. *Id.*, citing *Neftzer v. Neftzer,* 140 Ohio App.3d 618, 748 N.E.2d 608 (12th Dist.2000).

**{¶58}** In this matter, the magistrate noted and the record reveals that Berger "filed no motion putting his mental health at issue[, so] no further information was permitted regarding the reasons [Berger] is counseling." The magistrate additionally concluded that Berger would facilitate court-ordered visitation, and that Feng's claims that Berger would not permit her to have additional parenting time to be incredible. From the foregoing, we are unable to conclude that the trial court abused its discretion in refusing to permit discovery as to Berger's mental health professionals. This assignment of error is without merit.

**{¶59}** In her sixth assignment of error, Feng maintains that the trial judge was improperly assigned to hear this matter.

**{¶60}** This court rejected the same contention in Feng's appeal from the contempt finding. *See In re Contempt of Feng*, 8th Dist. No. 95749, 2011-Ohio-4810. This court stated:

> Berger's petition in the instant case received a new case number and was assigned to the administrative judge. The administrative judge then determined that Berger's petition, DV–333284, should be assigned for hearing to the same judge to whom the underlying divorce case had been assigned. Since this procedure complied with the local rules, Feng's argument fails.
>
> [Further,] the record reflects Feng never objected to the assignment, either in the underlying divorce action or in the instant case. *Id.* at ¶ 32-33.

**{¶61}** This assignment of error is without merit.

**{¶62}** In her final assignment of error, Feng argues that the trial court erred in refusing to award her attorney fees.

**{¶63}** The award of attorney fees is within the discretion of the trial court. *Lord*, 8th Dist. No. 89395, 2008-Ohio-230. Pursuant to R.C. 3105.73(B), "in any post-decree motion or proceeding that arises out of an action for divorce * * * the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable."

**{¶64}** In this matter, the trial court's refusal to award Feng attorney fees comported with its decision that her motion was not well-taken, so she was not a prevailing party. *Dean v. Dean*, 8th Dist. No. 95615, 2011-Ohio-2401.

**{¶65}** The judgment of the trial court that denied Feng's motion to modify the agreed parenting plan is affirmed.

## II. BERGER'S CROSS-APPEAL

**{¶66}** In his three assignments of error, Berger complains that the trial court abused its discretion in denying his various motions to show cause without affording him a hearing.

**{¶67}** Berger complains that the evidence demonstrates that Feng was in contempt of court for failing to return E.B. to Berger's possession in August 2009, thereby precluding his vacation with E.B., and failing to bring E.B. to two appointments in August 2009 with Dr. Neuhaus.

**{¶68}** An appellate court will not reverse a trial court's decision in a contempt proceeding absent a showing of an abuse of discretion. *Willis*, 149 Ohio App.3d 50, 2002-Ohio-3716, 775 N.E.2d 878, at ¶ 59. In this matter, the magistrate found insufficient evidence to establish that Feng acted in contempt of court. We find no abuse of discretion.

**{¶69}** Berger additionally complains the trial court erred in failing to hold Feng in contempt regarding various financial and support issues. He concedes, however, that the "[m]agistrate only heard evidence relating to the August 11, 2009 motion to show cause. The remaining motions were to be deferred to another hearing. * * * and it is believed that the trial court did not rule on [these] motions." We will therefore not address these motions.

**{¶70}** The assignments of error set forth in the cross-appeal are without merit.

**{¶71}** In accordance with all of the foregoing, we find that the trial court did not abuse its discretion in denying Feng's motion to reallocate parental rights, and that it properly determined the denial of that motion was in the best interest of E.B. The remaining issues raised in the appeal and in the cross-appeal are without merit, and the judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

MELODY J. STEWART, P.J., and
COLLEEN CONWAY COONEY, J., CONCUR